————o————

ISAAC H. ERISMAN, *et al.*, Respondents, *vs.* JOHN B. ERISMAN, *et al.*, Appellants.

1. *Equity—Bill to set aside trust deed made for wife of grantor—Trustee must be co-defendant.*—In a proceeding to set aside a deed made by one since deceased to a trustee for the wife of the grantor, the trustee must be joined as defendant, otherwise the legal title cannot be divested. (Siemers v. Kleeburg, 56 Mo., 196.)

*Appeal from St. Louis Circuit Court.*

*Krum & Patrick*, for Appellants.

*J. S. Bond, with M. Kinealy*, for Respondents.

SHERWOOD, Judge, delivered the opinion of the court.

The plaintiffs, who are heirs of John Erisman, deceased, brought this suit to set aside a deed conveying a certain house and lot in the city of St. Louis, together with household furniture, etc., to Jno. C. Vogel as trustee for Mrs. Erisman, then wife of the grantor, their father.

The grounds on which this conveyance is sought to be set aside, are, that decedent, who at the time of his death was about seventy-four years old, was enfeebled by sickness, suffering and old age, and that defendants, John B. Erisman, a son, and Mary Erisman, the wife of deceased, taking advantage of his situation, and of the fact that the son just named, was his agent and had his entire confidence, conspired and confederated together to obtain all of his property and to defraud plaintiffs out of their just share in his estate; that in furtherance of this fraudulent design, defendants, by means of false statements respecting plaintiffs, and by threats and reproaches, brought decedent into a condition of mind subservient to their will, and induced him to make the conveyance mentioned.    The deed is dated March 30, 1869.

This suit was tried in connection with one, brought by the public administrator, wherein similar allegations were made against defendants, in respect to money, notes, bonds and certificates of deposit, owned by deceased prior to his death, which took place the 8th of June, 1869.

It would serve no useful purpose to review, in detail, the voluminous mass of testimony in this case.  It is sufficient to say at the outset, that as to the charges of conspiracy, confederation, threats, undue influence, etc., etc., made against defendants, an attentive perusal of the record discloses nothing which affords these charges any degree of support, so far as relates to the subject matter of the present suit.

. As to the allegation that deceased was of weak mind in consequence of the enfeebling influences of sickness and old age, although two or three of the witnesses say that the decedent was "fickle-minded" and frequently would "change his opinions," etc., etc., yet the testimony, taken as a whole, shows, with unquestionable clearness, that he was in full possession of his faculties, collected his rents for the house, giving receipts therefor, and had a full appreciation of and understood all the details of business.

The testimony of Vogel, a disinterested witness, shows the mental capacity of the deceased in a very conspicuous light.

The latter part of February, 1869, decedent sent for him, having met him some time before at his office. When Vogel arrived at the house, decedent said he had sent for him, thought he was getting the dropsy, did not think he could live much longer, wished to arrange his property, and "talked as sensibly as any man of his age could talk." Upon being asked if he desired to make a will, he said no, he wished to "deed the property," that he had given his wife the choice between bonds and money, and real estate, and that she preferred the real estate. He was advised not to do this, as he might get well, witness having known others similarly affected to recover; that he might outlive those to whom he gave his property, and might need it again, "that he had better hold on and see." Nothing was done then.

In the latter part of March Vogel was sent for again, found decedent worse with the dropsy, and the same remarks were made by him as before; said he did not wish to delay any longer, desired Vogel who had formerly been a notary, which it seemed Erisman knew, to write a deed for him, and on being told that Vogel was not then acting in that capacity, requested him to procure a man on whom he could rely to prepare the papers for him, and on Vogel promising to do so, Erisman said "I'll give you my old deed," and when asked to whom he wished the property conveyed, said "to my wife," giving her name. Vogel suggested that the property would have to be conveyed to a trustee, and Erisman remarked in substance, that he wished it so arranged that it could not be disturbed; that unless it were properly arranged, he knew there would be trouble after his death. Erisman then gave Vogel his old deed, and the latter told him that so soon as the new deed was written, he would bring a notary to take the acknowledgment. The deed, when prepared, was taken up in a day or two, explained to Erisman, who signed and acknowledged it, and it was also signed by the trustee, Vogel, who was requested by Erisman to have it recorded; but Vogel told him that Boeck, the notary, would leave it at the recorder's office, and that the deed after record, would be

brought to him by Vogel; and this was accordingly done in about two weeks thereafter, that is, in the middle of April, Vogel telling him at the same time to keep the deed, that he might live, etc.

Early in May, Vogel and wife were sent for by Erisman, went up to his house and saw him deliver, with appropriate remarks, the deed before mentioned. At this last interview, the mental condition of Erisman remained unchanged. He charged his wife particularly, that the safe, a small one in which he kept his papers, bonds, etc., belonged to his son, Isaac, who had a key, and that she must let him have it. The testimony of Mrs. Vogel, also, as to what transpired on this occasion, is fully corroborative of that of her husband.

In addition to that, the testimony of Drs. Gregory, Barker and Heacock, physicians who at various periods, during his last sickness, up to within a day of his death attended deceased, is very decidedly in favor of his being the possessor of a mind unclouded by disease. It seems he had met and conversed with Dr. Heacock the previous year, they were both Pennsylvanians, and when the Dr. was called professionally to see Erisman, he alluded to the former conversation in reference to that State, to James Buchanan, and "how he carried his head under his white cravat."

Erisman seemed anxious that unless the Dr. could benefit him by his services, no bill should accrue, and frequently asked the Doctor if he thought he could cure him; finally suggested "tapping" as he had been told that would be beneficial.

From this brief comment upon and summary of the evidence, it must be quite apparent that so far as regards the real estate conveyed, there is no ground whereon to base an affirmance of the action of the lower court; and as respects the personal property mentioned in the deed, it will be time enough to consider the questions relating to it when the party entitled thereto shall bring an action therefor. The matter has not been adverted to by counsel, but there is an insuperable objection to setting aside the deed, apart from the points

already noticed. The trustee was not made a party defendant. He was an absolutely necessary party, in whose absence no decree, which could accomplish the divestiture of the legal title, could be rendered. (Siemers vs. Kleeburg, 56 Mo., 196.)

Judgment reversed ; all the judges concur.