————o————

JONATHAN K. SUTTON, *et al.*, Respondents, *vs.* EDWIN HAYDEN, *et al.*, Appellants.

1. *Equity—Specific performance—Parol promise to leave property in consideration of personal attentions—Action to vest title, proof of, what sufficient.*—In suit in equity, brought by the niece against the heirs of her deceased aunt, to vest in the former the title to certain lands owned by the latter at the time of

| | |
|---|---|
| 62 | 101 |
| 31a | 554 |
| 32a | 110 |
| 32a | 113 |
| 62 | 101 |
| 99 | 483 |
| 62 | 101 |
| 113 | 346 |
| 62 | 101 |
| 118 | 669 |
| 62 | 101 |
| 133 | 37 |
| 62 | 101 |
| 69a | 11 |
| 62 | 101 |
| 150 | 597 |
| d80a | 349 |
| 62 | 101 |
| f161 | 575 |
| 62 | 101 |
| 170 | 1701 |

her death, it appeared that the aunt had written to the guardian of the niece, promising that if she would come and live with her, and nurse and take care of her, for the remainder of her days, then all her property should, at her death, be her niece's; and it appeared that the guardian assented to the arrangement, and that it was faithfully carried out by his ward, and that meanwhile the promise of the aunt was frequently reiterated. *Held*, 1st, and generally, that equity would sustain an action of that description; 2d, that such promises, although not clothed in technical and precise terms, would be sufficient if no doubt remained as to the intention ; 3d, that the contents of the letter might be shown by testimony derived from recollection, its non-production being sufficiently accounted for, and its authorship might be shown by proof of general familiarity with the handwriting; 4th, that the promise need not be in writing, but would be sufficient if made orally; 5th, that a failure to specify the mode of carrying it out, or the property intended to be bequeathed, would not impair its binding force; 6th, that the agreement having been acquiesced in and carried out by the niece, after her majority, no more formal assent thereto on her part than that given by her guardian was necessary.

2. *Trustee of married woman—Joinder of co-defendant in suit to divest her title.*—One who is appointed trustee for a married woman's estate, in suit to divest her title, must, if the legal title be vested in him, and should as a matter of precaution at all events, be joined as co-defendant.

### *Appeal from St. Louis Circuit Court.*

*Daniel Dillon*, for Appellants.

I. The evidence did not prove the contract alleged in the petition.

II. The alleged contract was not established by the kind of evidence, or with that satisfactory proof required by courts of equity in decreeing specific performance.

(*a.*) The alleged contract is one that the statute of frauds requires to be in writing, and signed by the party to be charged, and the evidence for plaintiffs was entirely oral, and consisted entirely of testimony regarding what was said in casual conversation. (1 Greenl. Ev., §§ 96, 200; 1 Phil. Ev., [5 Am. Ed.] t. p. 396 ; 2 Sug. Vend., 8 Am. ed., p. 435, and note M. and cases cited ; Fleming vs. Donohoe, 5 Ohio, 255 ; Eyre vs. Eyre, 4 C. E. Green [N. J.], 103.) Moreover, the person who is said to have made these statements is dead. Where this is the case a court of equity will not decree specific performance or divest title on the strength of it. (Marks vs. Pell, 1 Johns. Ch., 594; Johnson vs. Quarles, 46 Mo.,

427; Underwood vs. Underwood, 38 Mo., 530–1; Ringo vs. Richardson, 53 Mo., 385; Kennedy vs. Kennedy, 57 Mo., 78.)

(*b.*) Plaintiff cannot invoke any act of supposed part performance, for the purpose of proving the alleged contract. In order to take a case out of the operation of the statute of frauds, and warrant a decree for specific performance, courts of equity require two distinct things to be satisfactorily proven, first the alleged contract, and secondly, the requisite acts of part performance done under and by virtue of the contract alleged and proved. (Sto. Eq. Jur., § 764; Goodwin vs. Lyon, 4 Port., 305; Parkhurst vs. Van Courtland, 1 Johns. Ch., 284; Tilton vs. Tilton, 9 N. H., 391; Purcel vs. Miner, 4 Wal., 418.)

(*c.*) The contract has not been established by that satisfactory and determinate proof required by courts of equity in granting specific performance of contracts required by the statute of frauds to be in writing. (Semmes vs. Worthington, 38 Md., 298; Fardy vs. Williams, Id., 493; Forrister vs. Scoville, 51 Mo., 268; Kennedy vs. Kennedy, 57 Mo., 78; Knoll vs. Harvey, 19 Wis., 99; Blanchard vs. McDougal, 6 Wis., 171; Purcell vs. Miner, 4 Wall., 513; Allen vs. Webb, 64 Ill., 342; Reese vs. Reese & Smith, 41 Md., 543.)

The evidence hardly warrants the conclusion that plaintiff Nancy expected or hoped to be compensated by a legacy. But if she did render services with such expectation, she would not only not be entitled to specific performance, but would have no legal claim whatever against Mrs. Green or her estate. (Osborn vs. Gov. of Guy's Hosp., Strange. 728; Little vs. Dawson, 4 Dall. [Pa.] 111; Ackerman vs. Ackerman's Ex'r, 24 N. J., 315.)

III. The evidence does not prove any contract in reference to the property described in the petition. In order that a contract in relation to land may be specifically enforced it must be made with reference to some particular land, and it must point out and describe that particular land. (Fry Spec. Per., § 209; Shelton vs. Church's Ad., 9 Mo., 774; Foster vs. Kimmons, 54 Mo., 488; Reed's Heirs vs. Hamback, 4 J. J.

Marsh, 377 ; Parish vs. Koons, 1 Pars. Sel. Eq. Ca., 95 ; 1 Sto. Eq. Jur., § 717 ; Fry Spec. Per., §§ 11, 12.)

IV. The alleged contract was lacking in the quality of mutuality, and therefore, according to the rules of equity, cannot be specifically enforced. (Fry Spec. Per., § 131 ; Gelston & M. vs. Sigmund, 27 Md., 343–4 ; Marble Co. vs. Rylay, 10 Wall., 359 ; Bocine vs. Glading, 21 Penn. St., 53 ; McMurtrie vs. Bennette, Harring., Ch. R., 126 ; Mastin vs. Halley, 61 Mo., 196 ; Fry Spec. Perf., §§ 286, 287 ; DeRwafinole vs. Corsette, 4 Page 269–70 ; Sanguirica vs. Bendette, 1 Barb. [Sup. Ct.] 375.)

V. There was no such part performance as took the case out of the statute of frauds. All that it can be claimed that Nancy did, was to render personal service for Mrs. Green. It cannot be said that she went into possession of this property under or by virtue of the alleged contract. The rights of these parties became fixed and vested at the death of Mrs. Green, and she and her husband had possession up to that time ; and Mr. Green continued in possession until he died ; since which time plaintiffs, who had been living in the house with Mr. Green, have continued to live on the property. The rendering of personal services can, in principle, be no more than paying the purchase money, which courts of equity do not consider such an act as part performance as takes a case out of the statute of frauds. (Horn vs. Ludington, 32 Wis., 73 ; Sto. Eq. Jur., § 760 ; Chambers vs. Lecompte, 9 Mo., 575 ; Wright vs. Wright, 22 Gratt., 370 ; Cronk vs. Trumble, 66 Ill., 408 ; Germon vs. Machin, 6 Paige Ch. R., 293.)

Again, the acts of part performance, in order to take a case out of the statute of frauds, must point unequivocally to the contract alleged. It is not enough that the acts are evidence of some agreement. (Sto. Eq. Jur., § 762 ; Billingslea vs. Ward, 33 Md., 52 ; Mundorf vs. Kilbourn, 4 Md., 462 ; Wood vs. Thorn, 58 Ill., 469–70 ; McMurtrie vs. Bennette, Harring. Ch. R., 126 ; Millard vs. Ransdell, Id., 392 ; Ham vs. Goodrich, 33 N. H., 42 ; Tilton vs. Tilton, 9 N. H., 391.)

VI. Plaintiffs have a complete and adequate remedy at law. If it is true, as they allege, that Nancy A. rendered

certain services under a contract with Mrs. Green to be paid a certain consideration, and she had not been paid, plaintiffs are entitled to have a claim for such services allowed in the probate court against the estate of Mrs. Green. If the alleged agreement existed, this case would be similar, on this point, to Horn vs. Ludington, 32 Wis., 73; Ham vs. Goodrich, 33 N. H. 32; Martin vs. Wright, 13 Wend., 460; Jacobson vs. Executors, &c., 3 Johns., 199; Browne Stat. Frauds, § 439; Glass vs. Hulbert, 102 Mass., 35, 36.

The facts in this case do not make out anything resembling the kind of fraud alluded to by courts of equity in this connection.

*Hugo Muench, with Hitchcock, Lubke & Player*, for Respondents.

The bill sets out a sufficient case for relief in equity. The relief sought against Mrs. Green is equivalent to a decree for specific performance of contract; or to a decree declaring the vendor of land, who refuses to make a deed, a trustee for the vendee who has performed the terms and conditions of sale, and also enforcing such trust by vesting title in vendee.

I. Contracts *inter vivos* for the grant or devise of property by the one dying first, to the survivor, when clearly proved and upon sufficient consideration, are valid and will be enforced in equity. (Fenton vs. Emblers, 3 Burrows, 1278; S. C., 1 W. Bla. R., 353; Izard vs. Middleton, 1 Dessaus, Ch., 116, and note and cases cited; Rivers vs. Rivers, 3 Dessaus, Ch., 190–195; Loffus vs. Maw, 8 Jur., N. S., 607–609; Rhodes vs. Rhodes, 3 Sandf. Ch., 279; 2 Hargrave's Jurid. Arg., 291–98; Thynn vs. Thynn, 1 Vern., 296: Lester vs. Foxcroft, Colles R. [H. Lords] 108; S. C., 1 White & T. Lead. Cas. Eq., 719 [*625]; 1 Sto. Eq. Jur., § 781.)

II. The objection that the contract was not proved to be in writing, is not valid.

(a.) The proof shows that Mrs. Green did make such an agreement in writing by a letter to Cyrus Goodell, father of

Mrs. Sutton, the existence, loss and contents of which were sufficiently proved.

(*b.*) Abundant proof was also made of repeated verbal promises to like effect, by Mrs. Green, on the faith of which plaintiff Nancy rendered the services in question.

III. Such declarations were competent evidence tending to confirm the proof of an agreement in writing made by other witnesses; and are admissible against appellants, claiming as heirs of Mrs. Green. (Hambright vs. Brockman, 59 Mo., 52, 57; Stewart vs. Glenn. 58 Id., 481; Colt vs. Ladue, 54 id., 487; 1 Greenl. Ev., §§ 171, 191, 207.)

It was competent by such declarations, in connection with the conduct of the parties interested, to prove a parol agreement enforceable in equity. (Johnson vs. Quarles, 46 Mo., 427; Underwood vs. Underwood, 48 Mo., 531, and cases below cited.)

IV. The case is not within the statute of frauds under the facts proved; and equity will decree specific performance of the promise, though not in writing:

(*a.*) Because plaintiff having remained in possession of the property for several years after Mrs. Green's death, claiming it as her own on the faith of said agreement, she would be liable for the rents and profits if the agreement were not enforced, which would be a fraud on her against which equity will relieve. (Rhodes vs. Rhodes, 3 Sandf. Ch., 279; Loffus vs. Maw, 8 Jur. N. S., 609; Neale vs. Neales, 9 Wal., 1–9; Swain vs. Seamens, id., 254, 274; Young vs. Montgomery, 28 Mo., 604; 1 White T. Lead. Cas. Eq., pp. 730, *et seq.*; Browne, Stat. Frauds, § 463 *et seq.*; Cases in 2d Hargrave's Jur. Arg., 291–98; Farrar vs. Patton. 20 Mo., 81; Dickerson vs. Chrisman, 28 Mo., 140; 1 Sto. Eq. Jur., §§ 761–5; Thynn vs. Thynn, 1 Vern., 296; Lee vs. Howe, 27 Mo., 524; Griffith vs. Judge, 49 Mo., 540.)

(*b.*) Because the services which plaintiff was to render, and did faithfully render, to Mrs. Green's complete satisfaction, for eight years, were of a peculiar and personal nature, and

cannot be compensated for in damages.   (Rhodes vs. Rhodes, 3 Sandf. Ch., 279 ; Browne on Stat. Frauds, § 463.)

(c.) Because the plaintiff, Nancy A. Sutton did completely fulfill the agreement on her part. (Self vs. Cordell, 45 Mo., 346 ; Suggett vs. Cason, 26 Id., 221 ; Pitcher vs. Wilson, 5 Mo., 48 ; Blanton vs. Knox, 3 Mo., 342.)

SHERWOOD, Judge, delivered the opinion of the court.

This is a proceeding in equity, brought by Jonathan K. Sutton and Nancy A. Sutton, his wife, against Mary A. Smith and others, as heirs at law of one Mrs. Nancy A. Green, deceased, and Edwin Hayden, as trustee, for the purpose of having the title to a certain house and lot, fully described in the petition, vested in the plaintiff, Nancy A. Sutton, and for other incident relief.

The petition alleges, in substance, that Mrs. Nancy A. Green, in the year 1856, became the owner of a separate estate in fee in a lot on Morgan Street, between 17th and 18th streets, in the city of St. Louis, upon which she afterwards built a house, the legal title to said property then being in one Francis H. Manter, as trustee for her benefit ; that on February 3d, 1871, Edwin Hayden was appointed trustee under the original deed conveying said lot to Mrs. Green's trustee.   This deed is the same instrument heretofore construed by this court in the case of Ezra Green vs. J. K. Sutton (50 Mo., 186).

The petition avers that the plaintiff, Nancy A. Sutton, is the daughter of Cyrus E. Goodell, who was the brother of said Nancy A. Green, who herself was childless, and in feeble health during the last fifteen years of her life ; that in the year 1851, Mrs. Green, desiring the company and affection of plaintiff, Nancy A. (who was her godchild), made an agreement with the latter's father to take her to St. Louis, bring her up as her own daughter, and make her her heir at her (Mrs. Green's) death ; that she did, in fulfillment of this agreement, take the plaintiff to St. Louis, where she remained about a year, then finding that city life did not agree with the child, and herself wishing to go east, she sent her to Galena, Illinois, to

Mrs. Mary A. Smith, sister of Mrs. Green, and one of the defendants; that in 1860, Mrs. Geeen having then about completed her house on Morgan street (the property in controversy), and being in very feeble health, again wrote to plaintiff, Nancy A., and promised and held out to her, that if she would come and live with her (Mrs. Green) she should be as a daughter to her, and nurse and take care of her for the remainder of her (Mrs. Green's) life, and all that she had should be hers (Mrs. Sutton's) at her (Mrs. Green's) death.

It appears that plaintiff, Nancy A., accepted said offer, and relying upon said promises, immediately entered upon the performance of her part of the agreement; that in doing so she was subjected to great personal inconvenience, and was compelled to perform services menial and in themselves arduous and disagreeable, such as the helpless and invalid condition of Mrs. Green rendered necessary; that all such services were performed by plaintiff, Nancy A., cheerfully and with tenderness and affection; that Mrs. Green accepted said services, at all times expressed herself as highly gratified at the manner in which they were performed, and frequently thereafter expressed her intention and promised said plaintiff to carry out her (Mrs. Green's) part of said agreement; that notwithstanding said promises, and notwithstanding the complete performance by plaintiff, Nancy, of said agreement on her part, Mrs. Green failed to carry out her own part of said agreement, and failed to devise, convey, or otherwise secure the property in controversy to said plaintiff; and that no adequate or sufficient relief in the premises can be had at law.

It is charged that certain of the defendants brought suit in partition for the property in controversy, for the purpose of indirectly barring plaintiff's rights to the same. Plaintiffs then pray for an injunction against the further prosecution of said partition suit; for a decree vesting the plaintiff, Nan cy A. Sutton, with the complete equitable title in the prem ises; for an account by the defendant Hayden, as trustee, and for general relief.

The defendants (except the defendant Hayden, who demurred to the petition, and against whom a default was taken) filed an answer, containing, in the main, specific denials of all the allegations in the petition, and setting up some new matter. The new matter was replied to by plaintiffs.

A trial was had before the Hon. George A. Madill, one of the judges of the Circuit Court of St. Louis county, in Special Term, and a decree rendered divesting out of defendants and vesting in plaintiff, Nancy A. Sutton, absolutely, all the legal and equitable title to the premises described in the petition, and enjoining the remaining defendants from, in any manner, asserting title to said premises, as heirs of Mrs. Green.

On appeal to the General Term, this judgment was affirmed and the cause comes here by appeal.

The testimony in this cause, after a careful perusal, is found strongly confirmatory of the allegations of the petition, and we are in consequence led to the conclusion reached by the circuit court.

There was some conflicting evidence it is true, but that conflict was very satisfactorily accounted for, and the evidence on the part of the defendants which produced it, contradicted by the letters and statements of the witnesses (Mrs. Smith and Cyrus E. Goodell) whose testimony might otherwise have had a greater or less appreciable effect, in the endeavor made by the defendants to overthrow that which plaintiffs offered in support of their allegation. If, however, the testimony of the above mentioned witnesses was not thus directly attacked, there is much ground for the opinion that aside from that which receives contradiction from them, there would still remain a sufficiency of evidence well warranting the decree.

Be this as it may, an instance is rarely found where the old chancery maxim "*falsus in uno, falsus in omnibus*" could be more fittingly applied, than to these witnesses.

But apart from the emphatic contradiction given to these witnesses, (who are directly interested to defeat the plaintiff's claim) by their own admissions and letters, the testimony of

Rohanna, the sister of Mrs. Sutton, is apparently consistent and truthful, is that of a disinterested witness, and as to the contents of the lost letter from Mrs. Green to her brother, Cyrus E. Goodell, in reference to the promise mentioned in the petition, finds abundant confirmation in the testimony of other witnesses, more especially in that of Mrs. McCamant, who on this point testifies, that Mrs. Green, shortly before starting for her niece, Mrs. Sutton, stated to witness that she had corresponded with Nannie's—her niece's—father, and that it "was all fixed" that Nannie was to be her adopted daughter and inherit everything she had. Numerous other witnesses, equally disinterested, and with every indication of candor, testify to continuous declarations made by Mrs. Green during a series of years, while her niece was engaged in the arduous duties incident to the position which she so capably filled, which fully bear out the allegations of the petition, that the niece in consideration of coming and living with her aunt, being a daughter to her, and nursing and attending her during her life, should, at her death, be the recipient of her property; and that the niece gave to the discharge of these manifold cares, down to the period of her aunt's death, an unhesitating and unwearied tenderness and attention which are only bestowed where affection prompts them, the evidence also clearly demonstrates.

It is true, the witnesses do not in many instances give, nor pretend to give, the precise language of these frequent declarations made by Mrs. Green in reference to the status which her niece occupied towards her, with regard to the ultimate disposition of her property, but with almost entire unanimity, their recollection of those oft repeated statements of the aunt concur in conveying the idea which the petition asserts.

It was not to be expected, as counsel for plaintiffs in argument very aptly suggested, that Mrs. Green, a woman unskilled in technical terms, should use language expressive of her intentions, clothed with all the formalities incident to professional precision.

It was quite sufficient if she gave such expression to her purposes, as left no room for doubt as to what those purposes were.   And this she did.

The objection made at the trial, and also urged here, that oral evidence could not be received to establish the agreement in question, is entirely obviated by the testimony of Mrs. Sutton's sister in relation to the lost letter from Mrs. Green to her brother, the father of witness.   The absence of this letter was satisfactorily accounted for, due diligence having been devoted to searching for it.   The witness who seemingly testifies with great fairness, states she had never seen her aunt write, but had become conversant with her handwriting by seeing frequent letters purporting to be signed by, and which her father said came from, Mrs. Green.

Other letters, containing money, also apparently written by the aunt, had been seen by the witness at a subsequent period, directed to her sister, who was then on a visit at the house of witness.

The letter particularly referred to, was found in a package of. old letters addressed to the father, and found by the daughter in a trunk given by him to her on the eve of her departure from home.   This letter contained the proposal from Mrs. Green to her brother, that if he would let his daughter Nancy come and live with her, she would come after her, adopt her as her own child, bring her up, and if she remained with her until the age of eighteen, she should have her property.

The exact language of this letter is not given, but the witness gives her best recollection as to its purport, which, in effect, substantially corresponds with the testimony of Mrs. McCamant, that such a letter was written by Mrs. Green, and that the proposal which it contained, to make her niece her heir, was acceded to.   But even if there were nothing in writing evidencing the agreement under consideration, this should not restrain equitable interposition.

Ordinarily it is the case that the remedial justice of a court of equity as administered by a decree for specific performance, is invoked where the agreement respects lands, and where

such agreement in any other *forum* would be held void, as in contravention of the statute of frauds. But the jurisdiction of courts of equity is by no means circumscribed within such narrow boundaries. That beneficent jurisdiction is called into activity on numerous other occasions, where, but for its timely exercise, there would be either a partial or else an entire failure of justice.

Thus, although the statute requires wills to be in writing, (Wagn. Stat., 1364, § 3) equity will specifically enforce a parol contract made upon sufficient consideration to dispose of property in a particular way by will. (Wright vs. Tinsley, 30 Mo., 389.) And a verbal agreement of this sort in case of part performance, will authorize a decree, giving that agreement full force and effect. (Gupton vs. Gupton, 47 Mo., 37.) In the case just cited, the contract was, that in consideration of supporting and taking care of an owner of a farm and his wife, an aged couple, the owner would bequeath the farm to the person making such provision and exercising such care. The possession of the farm was surrendered, the will executed in accordance with the contract, the aged persons taken home by the intended legatee and kindly cared and provided for. After the lapse of some years, owing to some disagreement, the testator violated his contract by conveying his property to a third person, and it was held that the beneficiary under the will, not being in fault, but having faithfully complied and still being ready to comply with the conditions on his part, was entitled to a decree vesting in him the title to the property which had been conveyed to a purchaser, with notice. In Brinker vs. Brinker, (7 Penn. St., 53) an agreement of this character was upheld, not because of delivery of possession of the property contracted to be bequeathed, but because in conformity to the agreement the will had been executed.

In Goilmere vs. Battison, (1 Vf., 48) the tenant in possession agreed with the heir at law, who had threatened to evict her, that if she died without issue of her body, she would either give him £500, or leave him her land. She failed in any way to comply with her agreement, and died, having be-

queathed her land to her second husband who took without notice. Yet on bill brought by the heir at law, the agreement was enforced against the husband. So, also, a contract to make mutual wills will be enforced if one of the parties has died, having made a will in conformity with the contract, and the survivor has enjoyed the benefit of the will thus made. (Sto. Eq. Jur., § 785 ; Dufour vs. Pereira, cited in Walpole vs. Oxford, 3 Ves., Jr., 412 ; Newl. on Contr., ch. 6, p. 111 ; Hinckly vs. Simmonds, 4 Ves. Jr., 160.) And the fact that a will is ambulatory until the death of the testator does not at all prevent the prevalence of the equitable rule which the above authorities enunciate. For it is competent for a person to bind his assets by his agreement, and his will in such case is the trustee for the performance of that which he has contracted.

In the case at bar the same principle as above asserted seems to be clearly applicable. Nor is it regarded as any substantial obstacle to the relief sought that the mode whereby the property was to be transferred was not specified. The intention to transfer the property was the chief thing, the method by which the intended result was to be attained, was wholly immaterial. The contract entered into might well have been discharged by deed or will. (Fry Spec. Perf., § 678 ; Barkweather vs. Young, 4 Drew, 1.) In the case last cited, where A. on marriage of his daughter with B. agreed to leave his daughter an equal portion with his other children, and the daughter having died during the lifetime of her father, leaving children, it was argued this circumstance operated as a discharge of the agreement by the act of God. But the vice chancellor ruled otherwise, holding that the agreement might have been performed in two ways, either by A.'s making provision for his daughter by will, or by his dying intestate; and though the death of the daughter precluded performance in the first way, this should not exonerate the father from performance in the second, since it was at his option, his intention being clear to do a certain thing, to adopt one or the other of two modes. In Rhodes vs. Rhodes, (3 Sandf.,

279) a similar objection met with a like fate. That case very nearly resembles the one before us. There two brothers owned a farm in common, as well as stock, farming utensils, etc., etc. One of the brothers becoming by reason of epileptic fits incapacitated for labor, and requiring constant attention, agreed with his brother, on condition of receiving the proper support, care and attention, that the latter should be compensated with all his property both real and personal. This agreement having been faithfully complied with, it was held that the objection was not tenable, that the agreement was mere parol. And it was further held that the services there contracted for, could not and were not intended to be compensated in money, and, in short, were incapable of computation by any pecuniary standard. (Browne Stat. Fr., § 463, cas. cit.) The same remarks will apply with equal force here.

There are things which money cannot buy; a thousand nameless and delicate services and attentions, incapable of being the subject of explicit contract, which money, with all its peculiar potency, is powerless to purchase.

The law furnishes no standard whereby the value of such services can be estimated, and equity can only make an approximation in that direction by decreeing the specific execution of the contract.

The above reasoning and authorities would seem a sufficient answer as to any lack of mutuality in the contract under consideration. But after a contract has been fully performed and acquiesced in, as in the present instance; after one contracting party has received all the anticipated benefits arising from a faithful performance, it must be apparent that it would be altogether inequitable to permit the heirs of such party at this late period, when the law can afford no adequate redress, to raise any objection on the score of mutuality, even were such objection originally tenable.

In the case of Martin vs. Halley, to which defendants refer, if a building had been erected, and its erection had been ac-

quiesced in, we would not, perhaps, have felt at liberty to refuse the plaintiff a decree. In the case before us, however, we are not without authority, that the mutuality was co-existent with the · commencement of the services rendered. (Gupton vs. Gupton, *supra*.)

But were this otherwise, the authorities we have quoted in respect to mutual wills appear to convey the idea, that the rule as to mutuality being an essential ingredient in contracts whose enforcement is sought, finds an exception in cases of that character, because it would be obviously impossible to enforce a contract of that nature at the time of its formation. And by parity of reasoning, could we not, if necessary, invoke a like exception here? For those cases evidently proceed, not on the theory of the original enforceability of the contract, but on the ground that it would be highly inequitable to allow a surviving party to enjoy the benefit of a bequest, while refusing to conform to the contract on his part to make a like testamentary disposition of his property.

Another mark of distinction is to be observed between this case and ordinary proceedings for specific performance. In those cases, the precise property intended to be conveyed must be alleged and proven, while in cases like the present, it is sufficient to show a valid agreement to convey whatever property may remain at the death of the party contracting to convey. So that authorities cited in behalf of defendants, though clearly applicable to cases where specific performance is asked as to a particular tract of land, as having been expressly contracted for, have no application here.

Other cases cited for defendants, are regarded as either likewise inapplicable to the facts of this case, or else as enunciating views incompatible with our own, and in conflict with the principles enunciated in our former decisions, to which reference has been made.

As to the point that Mrs. Sutton, the niece, never formally assented to the agreement, it is enough to say that, while a minor, as the evidence shows, her father assented to the agreement in her behalf, and, that she both before and after attain-

ing her majority, acquiesced in and discharged all the duties which the agreement and the relations she sustained towards her aunt implied. A more formal assent than this was unnecessary.

In relation to the demurrer of Hayden, the trustee, on the ground of being improperly joined as party defendant, if the legal title was vested in him by the proceedings of 1871, he is certainly a necessary party. (Siemers vs. Kleeburg, 56 Mo., 196; Erisman vs. Erisman, 59 Mo., 367.) If, on the contrary, those proceedings did not confer the legal title, still he was apparently the possessor thereof, and consequently, the safer course was to make him a party. Besides Hayden was a party plaintiff in the partition suit, sought to be enjoined. This of itself makes the necessity for making him a party defendant here, plain.

But, as he was not in fault, there was no occasion to subject him to costs, and the judgment therefore in that particular will be modified; in all other respects, it will be affirmed. Judges Vories and Hough absent. The other judges concur.