————o————

DANIEL M. TUCKER, *et al.*, Defendants in Error, *vs.* ST. LOUIS LIFE INS. Co., *et al.*, Plaintiffs in Error.

1. *Practice, civil—Default, motion to set aside—Discretion of lower court in overruling—Interference of Supreme Court with.*—Ordinarily the Supreme Court will not interfere with the discretion of the lower courts in refusing to set aside defaults. Where there is a palpable abuse of that discretion, however, the rule is otherwise.

2. *Practice, civil—Common law modes of procedure adopted, when—Affirmative relief asked by co-defendant—Time to plead, what allowed.*—In phases of practice not embraced by the code, resort must frequently be had to common law procedure. Thus where defendant asks affirmative relief as against a co-defendant, the court must to some extent follow the rules of pleading and practice adopted by courts of chancery. It is unnecessary in such case to file a cross-bill and bring in the co-defendant. But where relief is sought by an

answer in the nature of a cross-bill, the same time should be given to plead as where the relief is prayed by the petition.

3 *Practice, civil—Motion to set aside default—Bill to adjust claims of successive incumbrancers—Final decree—Defendant—Re-instatement of—What good ground for.*—In a motion to set aside a default, the averment that defendant was served with a multitude of papers, was involved in extensive litigation and accidentally mislaid the petition, is not of itself a sufficient excuse for failure to answer. But where it further appears that the suit was brought to subject land to the payment of successive incumbrances according to their date, and on the very day of the default, a co-defendant and subsequent incumbrancer filed answer attacking the lien of the party defaulted as void for fraud, and more especially where the final decree pronounced thereon abolished and obliterated all the rights of the latter, the party should be reinstated, and the Supreme Court will interfere to that end.

*Error to Callaway Circuit Court.*

*McFarlane & Flanigan with Snell,* for Plaintiffs in Error.

*Hockaday & Boulware,* for Defendants in Error.

The decision of the circuit court was correct in overruling the motion of the plaintiffs in error, asking to have the judgment by default set aside.

The affidavit shows no meritorious defense.

The affidavit does not show that the parties and their attorneys had exercised proper diligence, but on the contrary gives evidence of gross negligence on their part. No diligence is shown in preparing for the defense, nor no sufficient excuse for the omission to do so.

The record shows that plaintiffs in error were personally served with process on May 25th, 1874, and that judgment by default was not entered against them until the November Term, 1874; that their motion to set aside the judgment so entered was not made until the May Term of said court, 1875, after all the issues had been made up and said cause called for trial. (Weimer vs. Morris, 7 Mo. 6; Field vs. Matson, 8 Mo. 686; Kirby vs. Chadwell, 10 Mo. 392; Austin vs. Nelson, 11 Mo. 192; Campbell vs. Gaston, 29 Mo. 343; Palmer vs. Russell, 34 Mo. 476; Lamb vs. Nelson, 34 Mo. 501; Bosbyshell vs. Summers, 40 Mo. 172; Gehrke vs. Jod, 59

Mo. 522; Castlio vs. Bishop, 51 Mo. 162; Hunt vs. Wallace, 6 Paige Ch. 371; Wells vs. Cruger, 5 Paige, 164; Hunter vs. Lester, 10 Abb. Prac. [N. Y.] 260; 27 Mo. 442; 10 Mo. 66; 13 Mo. 582; 19 Mo. 667.)

Whether a judgment by default shall be set aside is a matter within the discretion of the court to which application shall be made for that purpose. (Wagn. Stat., 1053, § 7; Ridgley vs. Steamboat "Rein Deer," 27 Mo. 442.)

As a default upon failure to answer admits the plaintiff's right to recover, the default cannot be reversed or in any way impaired by reason of the omission of any allegation which might have been demurred to. (Wagn. Stat., 1031, § 19; Robinson vs. Mo. R. R. Co., 53 Mo. 435; Burk vs. Flournoy, 4 Mo. 116; Wagn. Stat., p. 1000, §§ 4, 5.)

The pleadings stated facts sufficient to authorize the decree entered. (50 Mo. 161; 41 Mo. 257; 50 Mo. 350.) And the decree of the court was in strict accord with the prayer in the answers and the proof. (Durfee vs. Moran, 57 Mo. 375.)

The court was empowered to grant any relief which was consistent with the pleadings. (Ames vs. Gilmore, 59 Mo. 537.)

The whole matter being properly before the court which had full and complete jurisdiction of the parties and subject matter, it had the power to do full justice between the parties, proceed with the whole cause and decide it upon its merits. (Corby vs. Bean, 44 Mo. 379; Keeton vs. Spradling, 13 Mo. 321.)

The finding and judgment of the court below, cure all formal defects in the pleadings. (7 Mo. 314; 8 Mo. 512; 39 Mo. 287; 51 Mo. 522; 51 Mo. 154; 51 Mo. 454; Wagn. Stat., 1036, § 19; 44 Mo. 58; 49 Mo. 139; 36 Mo. 35; 53 Mo. 135; 32 Mo. 457.)

The doctrine is too well settled to admit of discussion or dispute that when a court of equity once acquires jurisdiction of a cause it will not relax its grasp until it shall have avoided a multiplicity of suits by doing full, adequate and complete justice between the parties. (Real Estate Sav. Inst. vs. Collonious, *ante* p. 290; 44 Mo. 379; 37 Mo. 204; 38 Mo. 55.)

An equitable defense set up in the answer may convert a suit at law into a suit in equity. A legal or equitable defense may be set up even if it involves a trial by jury and not by the chancellor, and the defense be only equitable. (State vs. Meagher, 44 Mo. 356; Freeman vs. Wilkinson, 50 Mo. 554.)

The circuit court had power and authority to decree a foreclosure and sale according to the prayer of the answer. (Darwin vs. Hatfield, 4 Sand. [N. Y.] 469.)

It was proper for defendants to set up in their answer both legal and equitable defenses, as to the joinder of law and equity in the same suit. (38 Mo. 492; 36 Mo. 202; 35 Mo. 483; 34 Mo. 134; 30 Mo. 228; 29 Mo. 99; 25 Mo. 357.)

The court below had full power to grant any relief consistent with the petition, answers and proof. (50 Mo. 101; Id. 350; 41 Mo. 257; 44 Mo. 379; 13 Mo. 321.)

The practice in this State, both at law and chancery, is controlled by the statutory code. Neither the common law or chancery practice is in vogue in this State, and the latter cannot be invoked in the present case. (Wagn. Stat., 1012, §§ 1, 2.)

The defendant in the court below, the St. Louis Life Insurance Company, was personally served with process and being thus brought in was in court for all purposes.

This court has full power to render such judgment as the court below should have rendered upon the pleadings and proof. If, therefore, this court should find there was error in the court below in adjudging and decreeing the deeds of trust to the insurance company fraudulent, it can render such judgment as should have been rendered in the court below, which will simply be to enter a decree of foreclosure of the Tucker mortgage and order any surplus, after satisfying the parties secured in that mortgage, to be paid to the insurance company. (Wagn. Stat., 1068, § 34.)

SHERWOOD, Judge, delivered the opinion of the court.

Action to foreclose a mortgage executed by defendant, Henry Larrimore, on the 28th day of March, 1870, to the plaintiffs in their firm name, to secure the payment of a note for $1,604.68,

as well as to secure the payment of a large number of other debts due by the same defendant to other creditors and co-mortgagees, who were also made parties defendant. The mortgage conveyed both real and personal property, but does not appear to have been recorded. On the 31st day of March, 1870, Larrimore executed to Clark & Holliday, and to Selby & Jameson, as trustees respectively of the Missouri Mutual Life Insurance Company, and of the St. Louis Life Insurance Company, deeds of trust which were duly recorded and which were designed to secure to each of such companies the payment of notes for $10,000 given for the purchase of life policies. These deeds of trust were duly recorded and conveyed portions of the same land already encumbered by the mortgage aforesaid.

In March, 1873, Larrimore, in order to secure certain notes from him to U. T. Miller and R. H. Tyler, amounting to several thousand dollars, executed to them another mortgage on the same lands.

In May, 1874, this suit was begun, and the last named mortgagees, as well as the St. Louis Life Insurance Company (which had meanwhile become the holder of what insurance notes remained unpaid by Larrimore to the other insurance companies), and the trustees before named were also made parties defendant.

The plaintiffs asked for foreclosure of their mortgage, the application of the proceeds of the sale of the mortgaged property to the satisfaction of the several incumbrances, in the order of their date, and for other and further relief.

At the return term of the writ, the trustees and the St. Louis Life Insurance Company, though served, having failed to answer were defaulted. U. T. Miller and R. H. Tyler, the mortgagees in the second mortgage, that of March, 1873, filed an answer alleging in substance that the deed of trust had been made by Larrimore for the benefit of his wife and children, that the notes secured thereby were without consideration and made with intent to hinder, delay and defraud his creditors, and this with full knowledge of such fraudulent purpose on the part of the insurance companies who were aware also of the existence of the mortgage now declared on, although not recorded ; that the St. Louis Life Insur-

ance Company was apprised of the fraud before becoming owner of the notes, and that the policies had been canceled prior to the bringing of this suit. The answer concludes with a prayer that they might become second in the proceeds of the mortgaged premises, the deeds of trust and notes canceled and for other and further relief.

This answer was filed the 28th of November, on the same day that the default in favor of plaintiffs was entered. At the May term, 1875, that at which the default, unless on cause shown, was to be made final, the defaulted defendants appeared, and filed a motion accompanied by affidavit, to set aside the default, but their motion was overruled, and on the next day the cause came on for hearing and final judgment was rendered, not only for foreclosure of the mortgage as prayed in plaintiffs' petition, but that the deeds of trust and notes secured thereby, be declared fraudulent and void, the trustees and the insurance companies, as well as the St. Louis Life Insurance Company, the holder of the unpaid notes declared participants therein; and that Miller and Tyler, the mortgagees in the mortgage of March, 1873, be declared entitled to distribution of the proceeds arising from the sale after the satisfaction of the first mortgage.

Ordinarily we do not interfere with the discretion confided to the lower courts, and not a few of our decisions enunciate this rule in so far as applicable to judgments by default. (Gehrke vs. Jod, 59 Mo. 522, and cas. cit.; Campbell vs. Gaston, 29 Mo. 343 ; Lamb vs. Nelson, 34 Mo. 501.)

Where, however, there occurs, as in the case at bar, a palpable abuse of that discretion, we cannot remain silent. Granting that the accidental misplacing of papers served on a party, is not of itself a sufficient excuse for failure to answer, although such party may be involved in extensive litigation, and the papers and writs served numerous; granting that the defendants were lacking in promptitude, still it does not thence follow that the action of the trial court was correct. For it should be the policy of courts to try causes on their merits whenever such a course will not result in hurtful delay. Thus, in Doan vs. Holly (27 Mo. 256),

38—VOL. LXIII

where a default had occurred, and the refusal to set it aside was approved, yet it was also said: "Notwithstanding this, had an affidavit been made, showing a meritorious defense to the action, time being asked for, to file an answer and prepare for trial, it should have been granted."

And it is peculiarly noteworthy in that case, that it had been twice before appealed to this court (25 Mo. 357; 26 Id. 186), and the third default had been taken. Similar language is used in Cooney vs. Murdock (54 Mo. 349), and Howell vs. Stewart (Id. 400). Here the affidavit and motion were filed on the day before the cause was called for trial, and an apparently meritorious defense was disclosed, showing that a considerable sum was still due the St. Louis Life Insurance Company, and claiming a priority for the deeds of trust which secured such remaining indebtedness.

But conceding that the motion to set aside the default was properly overruled, yet even this concession will by no means justify the rendition of such a judgment as we find in the record; a judgment which, proceeding far beyond the terms and scope of the default (by which those who were thus precluded from further pleading might perhaps without serious loss have abided) absolutely abolishes and obliterates all the rights of the appealing defendants on the mortgaged property, while affording them no opportunity to plead to and put in issue the damaging averments contained in the answer of Miller and Tyler. We cannot give sanction to such a course. The code is not sufficiently comprehensive to embrace every varied phase which a case may assume before reaching judicial determination, and in consequence of this, resort must be frequently had to common law methods of procedure, both in ordinary actions at law, as well as in proceedings looking merely to equitable relief. Numerous decisions of this court exemplify this. (State vs. Culp, 39 Mo. 530; Riley, adm'r, vs. McCord's adm'r, 24 Mo. 265; Meyer vs. Field, 37 Mo. 434, and cas. cit.; Fithian vs. Monks, 43 Mo. 502; Seimers vs. Kleeburg, 56 Mo. 196; Erisman vs. Erisman, 59 Mo. 367; Primm vs. Raboteau, 56 Mo. 407; Real Estate Sav. Inst. vs. John Collonius, *ante* p. 290, and cas. cit).

This being the case, and the code not prescribing the method to be pursued where a defendant asks affirmative relief from a co-defendant, except that a judgment giving affirmative relief may be rendered in such cases (Wagn. Stat., 1051, § 2) we must look to a certain extent to the rules of pleading and practice adopted by courts of chancery. In those courts when one defendant sought relief against a co-defendant as to matters *dehors* the original bill, it became necessary for him to file a cross-bill and have process to bring such co-defendant in. This view is taken in Indiana, whose code is similar to ours. (Fletcher vs. Holmes, 25 Ind. 458.) In this State, however, so far as we are informed, it has not been the practice to issue process in such cases; but it has always been customary to afford ample time to a co-defendant to answer as to the relief sought—a time which is generally fixed by the court's order to that effect. And if in the absence of any statutory rule, we are to be governed by parity of reasoning deduced from cases where relief is sought by petition, at least the same time and opportunity to plead should be granted where relief is sought by an answer in the nature of a cross-bill as when prayed for by petition. For the errors before mentioned the judgment is reversed and the case remanded. All the judges concur.