TEATS *et al.*, *Appellants*, v. FLANDERS *et al.*

Division Two, December 16, 1893.

1. **Specific Performance:** CONTRACT TO ADOPT CHILD: EQUITY. A court of equity will decree specific performance of a valid agreement by a testator or intestate to adopt one as a child and to make a settlement of property in consideration of personal services rendered, but it will only do so where such services have been fully and faithfully performed.

2. ———: ———: EVIDENCE. The burden is on the person claiming the benefit of such contract to establish it by clear, cogent and convincing evidence.

3. ———: ———: ———. Proof of casual remarks, made from time to time by the alleged promisor, but not in the presence of the plaintiff, are insufficient to establish the agreement.

4. ———: WITNESS: DEATH OF ONE CONTRACTING PARTY. One claiming under such contract is, where the other party is dead, incompetent to testify in an action to enforce the same.

5. ———: ———: ———. Where it is sought to use such witness in rebuttal as to matters occurring since the appointment of the administrator of the decedent, the offer of the evidence should be confined to such subsequent matters.

*Appeal from Buchanan Circuit Court.*—HON. H. M. RAMEY, Judge.

AFFIRMED.

*Benjamin J. Woodson* for appellants.

(1) Plaintiff is entitled to have a specific performance of her contract and a decree of this court vesting in her the title to all property claimed in her petition. *Davison v. Davison,* 13 N. J. Eq. 246; *VanDuyne v. Vreeland,* 12 N. J. Eq. 142; *Sharky v. McDermott,* 91 Mo. 646; *Wright v. Tinsley,* 30 Mo. 389. (2) The statutes of frauds do not apply to cases of this charac-

ter when there has been part performance. *Davison v. Davison,* 13 N. J. Eq. 246; *Van Duyne v. Vreeland,* 12 N. J. Eq. 142; *Sharky v. McDermott,* 91 Mo. 647; (3) Defendants Kneeland and Mrs. Flanders were incompetent witnesses. (4) Plaintiff was a competent witness to testify to the facts that happened after the death of Mrs. Flanders and to the matters testified to by other witnesses. *Wade v. Hanley,* 75 Mo. 394. (5) John F. Tyler was an incompetent witness because there was no foundation laid for his testimony; no establishment of the loss of the letter and of the contents thereof. (6) This court is not bound by the findings of the trial court in equity cases. *McElroy v. Maxwell,* 101 Mo. 294.

*Huston & Parrish* for respondents.

. (1) The petition shows that the third contract charged to have been made between Mrs. Flanders and Mrs. Teats was not performed by Mrs. Teats, and the undisputed evidence clearly shows this fact. (2) Under the evidence the plaintiffs are not entitled to a decree of specific performance. *First.* There is no evidence—not an item—that Mrs. Flanders ever contracted with Mrs. Teats, upon any consideration whatsoever, to leave Mrs. Teats her property when she died. *Second.* The evidence shows, beyond any question, that Mrs. Teats never performed the conditions on her part which she alleges was the consideration for the promise upon the part of Mrs. Flanders to leave Mrs. Teats her property at her death. To entitle the plaintiffs to recover, they must establish by evidence clear and unequivocal—by evidence so cogent and forcible as to leave no room for a reasonable doubt on the mind of the court trying the case, of the existence of the

contract alleged. *Berry v. Hartzell*, 91 Mo. 132; *Railroad v. McCarty*, 97 Mo. 214; *Sitton v. Shipp*, 65 Mo. 297; *Rogers v. Wolf*, 104 Mo. 1; *Veth v. Gierth*, 92 Mo. 97; *Paris v. Haley*, 61 Mo. 453; *Taylor v. Williams*, 45 Mo. 80. (3) The evidence must refer to and establish the agreement alleged in the petition, and none other. *Sitton v. Shipp*, 65 Mo. 297; *Emmel v. Hayes*, 102 Mo. 186; *Ellis v. Railroad*, 51 Mo. 200; *Rogers v. Wolf*, 104 Mo. 10; *Berry v. Hartzell*, 91 Mo. 132. (4) There is no evidence whatsoever of any contract upon the part of Mrs. Flanders to leave her property to Mrs. Teats. In fact, the only evidence relied upon by plaintiffs to establish that fact, were the mere loose, casual remarks of Mrs. Flanders as to the disposition she intended to make of her property. The contract cannot be established in this way. *Johnson v. Quarles*, 46 Mo. 423; *Berry v. Hartzell*, 91 Mo. 132; *Sitton v. Shipp*, 65 Mo. 297; *Forrester v. Scoville*, 51 Mo. 268; *Ringo v. Richardson*, 53 Mo. 385; *Kennedy v. Kennedy*, 57 Mo. 73. (5) The contract, if indeed there was one, was within the statute of frauds and void, and there was no such part performance thereof as to take it out. Story, Equity Jurisprudence [12 Ed.], sec. 764; *Johnson v. Quarles*, 46 Mo. 423; *Ringo v. Richardson*, 53 Mo. 385; *Kennedy v. Kennedy*, 57 Mo. 73; *Berry v. Hartzell*, 91 Mo. 136; *Rogers v. Wolf*, 104 Mo. 1, and authorities cited; *Paris v. Haley*, 61 Mo. 453; *Underwood v. Underwood*, 48 Mo. 527. (6) Mrs. Teats was not a competent witness, and the court did not err in refusing to permit her to testify. 2 Revised Statutes, 1889, p. 2056, sec. 3918; *Messimer v. McCray*, 113 Mo. 382, and authorities cited. (7) This court will defer to the decision of the lower court, who saw and heard the witnesses on the trial. *Erskine v. Loewenstein*, 82 Mo. 301; *Chouteau v. Allen*, 70 Mo. 290; *Berry v. Hartzell*, 91 Mo. 138.

GANTT, P. J.—This is a suit in equity, for specific performance of an alleged agreement by Mrs. Velveria Flanders, to leave all of her property at her death to Mrs. Teats, in consideration of services rendered.

The petition is material to a proper understanding of the issues involved. It alleges: "That plaintiffs are now and have been husband and wife since the —— day of —— 18—. That on or about the —— day of —— 1865, Nancy C. Teats came to the city of St. Joseph, Missouri, at the age of fifteen years, and her name was then Nancy C. Martin; that she was poor and had to support herself. That she then and there met and agreed with Richard M. Flanders and Velveria Flanders, his wife, in the city of St. Joseph. Said agreement between said parties was in substance as follows, to-wit: That said Nancy C. Martin was to go to the home and house of said Richard M. and Velveria Flanders, who then had no children, and to live with them as their child, doing and serving them as their child, with the promise and agreement that they would legally adopt her as their child. That in pursuance of said agreement she went immediately to their house as such child, with the full knowledge and consent of said parties, and entered into said relation, discharging all her duties as their child with the full understanding of all of said parties that she was to be so adopted, and at their death she was to receive and inherit all their property. And she continued to reside, and discharge all her duties as such child, such as working in and around their said home, doing cooking, sweeping, sewing, general household duties, and bestowing upon them a child's affections to their entire satisfaction and in full compliance of their said agreement until about the —— day of —— 1867, when said Richard M. Flanders died at said city, leaving no children. That said

female plaintiff from said day continued to reside with said Velveria Flanders as her child, under the other and further agreement between said Velveria Flanders and said female plaintiff, that she was to continue to so reside and act with her in the relation as aforesaid, and at her death she was to receive and inherit all of said Velveria Flanders' property. That she did continue to so reside with her, said Velveria Flanders, under the agreement made with her after the death of her said husband, doing and performing the things and work for her in like manner as she did before his said death, and as hereinbefore stated, until about the —— day of —— 187—, when she was married to plaintiff, Charles Teats, which said marriage was contracted and entered into with the full knowledge and consent of said Velveria Flanders. The plaintiffs then, with the consent of Velveria Flanders, went to live by themselves. That afterwards said Velveria Flanders requested plaintiffs to come to her house in St. Joseph and take care of her during her old days. That in compliance with said request, they resided with her and took care of her for about five years, discharging all of said duties as her said child, with the further promise that she, the female plaintiff, at the death of said Velveria Flanders was to receive all of her property. That said Flanders, during all of said time received and accepted her said work and services under said agreement. That plaintiff, relying upon and believing she had been so adopted as such child by said Velveria Flanders, continued to work and perform her said duties as aforesaid, and received nothing for said labor except her board and clothes, to the entire satisfaction of said Flanders. That defendants knew of the relation, and well understood that this female plaintiff was to so inherit their said property. That Velveria Flanders died about 1889, intestate, at the city of St. Joseph,

leaving as her only collateral kindred and heirs at law these defendants. That the said female plaintiff did not know or find out that she was not regularly and legally adopted as their said child until after their death in 1889, but expected at that time that she would receive all of her said property. That said Velveria Flanders at her death was seized of the following described real estate, to-wit: Lot 5, block 67, in Patee's addition to St. Joseph, Buchanan county, Missouri, and personal property after paying all of the debts of said estate, amounting to $3,000, which is now in the hands of Abner T. Kneeland, defendant, who administered upon the estate of said Velveria Flanders. Wherefore plaintiffs pray the court to declare specific performance of said agreement and to that end that all right, title, interest and estate in and to said real estate which the said Velveria Flanders had at the time of her death, and which vested in defendants as heirs at law of said Velveria Flanders to be divested out of them and that the same be vested in the plaintiff, Nancy C. Teats, and that the rights of said plaintiff to the personal estate of said deceased and remaining in the hands of said administrator be declared and established, and the rights of said plaintiffs in and to said estate be established as fully to all intents and purposes as though she had been formally and lawfully adopted as a child and heir at law of said deceased, and for all other proper relief."

The answer, ommitting caption, is as follows:

"Now come the defendants, and for answer to plaintiff's petition herein deny each and every allegation therein contained.

"The defendants for further answer and defense to the said petition of the said plaintiff and to the pretended cause of action therein stated, state that said pretended contract in said plaintiffs' petition declared

upon was not to be performed within one year next after the alleged making thereof, nor was the same nor any memorandum or note thereof reduced to writing and signed by the said Richard M. Flanders and Velveria Flanders or either of them, nor by any other person for them or either of them thereto lawfully authorized. Therefore defendants say that said pretended contract is within the statute of frauds and void. The defendants having fully answered, asked to be hence dismissed with their cost in this behalf expended.''

The defendant, Sophia Flanders, was the sister of the deceased, Mrs. Velveria Flanders, and Abner T. Kneeland was her nephew, and they are her only heirs at law, and Kneeland is also her administrator.

The undisputed facts are about as follows: In 1865 Richard M. Flanders and his wife Velveria, were residing in St. Joseph; they had no children, and about that time took Nancy Martin, then a girl fifteen years old, without home or friends, to live with them, sent her to school and supported her. There is some evidence in the record that Flanders in his lifetime expressed an intention of adopting the girl, but not in her presence. Richard Flanders died in 1867. In 1868, after his death, Nancy left Mrs. Flanders, and went to live at Mr. Whitehead's in St. Joseph for a year, and then went to Kansas where she resided for about three years, and there married her coplaintiff, Charles Teats.

In 1871 or 1872, she and her husband came back to St. Joseph and lived in one room of Mrs. Flanders' house, which they occupied, rent free, for about two years, and then moved away, and never afterwards lived with, or rendered Mrs. Flanders any service. Mrs. Flanders continued to reside in her home by herself most of the time, but at different times had tenants in a portion of her residence. In 1888 Mrs. Flanders

became insane and was sent to the asylum, where she died.

There was much evidence to the effect that Mrs. Flanders spoke of Mrs. Teats after her husband's death, as her adopted daughter, and various statements of hers were shown, to the tenor that she intended to give her property to Mrs. Teats, or Mrs. Teats and her child. There was some evidence that Mrs. Teats ran away from Mrs. Flanders when she was a girl, because she had punished her. There was evidence also, that after the death of Mrs. Flanders, Mrs. Teats wrote the defendant, Sophia Flanders, and advised her to take steps to secure the property, or Kneeland, the nephew, would get it all. At that time she made no claim herself to the property.

The evidencce further shows that Mrs. Teats rendered the services usually rendered by a house girl. She cooked, swept and washed, for Mrs. Flanders while there. After she and her husband left Mrs. Flanders, the evidence shows very little intimacy of any kind, during a period of sixteen years. Her visits were rare and short.

After plaintiffs moved away from her house, the deceased made a visit to her relatives in some eastern state and instead of leaving her affairs in charge of plaintiffs, she left her things with Mrs. Connors, a neighbor. When asked by Mrs. Connors if she never returned, what Mrs. Teats should have, she replied: "There are two feather beds; give her one."

I. The averments as to the promises of Richard Flanders to adopt Nancy Martin and taking her into his home, can only be regarded as matter of inducement in this case, as they clearly could not bind his wife, who was at the time under the disability of coverture, and neither his heirs nor his estate are parties here. The case must stand or fall by the proof of an

agreement by Mrs. Flanders, after her husband's death.

The averment is an agreement to adopt plaintiff, Nancy, in consideration that she would continue to reside with Mrs. Flanders, act and serve her as her child. The proof on this part of the petition is undisputed that she left Mrs. Flanders in a year after her husband's death, and never returned until after she was married, four years later. There is no averment of explanation in her pleadings of this absence. It is not alleged that she left on account of any misconduct, or ill treatment by Mrs. Flanders, or that Mrs. Flanders consented to her absence.

It is averred, however, that she married with the knowledge and consent of Mrs. Flanders, and that, after that, she and her husband lived by themselves with the consent of Mrs. Flanders. This may all be true, and yet it falls far short of showing that Mrs. Flanders had waived the performance of those services which were to constitute the consideration for her adoption as a child and to the benefits flowing from that relation.

But the bill proceeds to charge "that afterwards said Velveria Flanders requested plaintiffs to come to her house in St. Joseph *and take care of her in her old days;* that in pursuance of this request they did go and took care of her five years, with the promise that Nancy Teats should receive all her property."

As already said, the undisputed evidence shows they only lived with her two years. The consideration was that "in her old days" Mrs. Flanders should have their care and attention. For sixteen years before her death she received no services at their hands, a portion of this time she sorely needed the loving care and sympathy of some one, but the services for which, it is averred, she had contracted were not rendered.

The petition on its face does not state any equity. The allegation of five years' services is not a satisfaction, or performance of the agreement to take care of Mrs. Flanders "*in her old days.*" There is no evidence that plaintiffs suffered any damages by reason of living with Mrs. Flanders. They were without means, and for the services rendered her they were furnished a home, free of rent, and Mrs. Teats received her board and clothes during that time.

Plaintiffs rely upon *Sharkey v. McDermott*, 91 Mo. 647, and similar cases in this court and elsewhere. There can be no question that a court of equity will decree specific performance of a valid agreement by a testator, or intestate to give a part, or all of his or her property to one rendering the attention and services of a child, or otherwise, when those services have been fully and faithfully performed by that one. *Wright v. Tinsley*, 30 Mo. 389; *Gupton v. Gupton*, 47 Mo. 37; *Sutton v. Hayden*, 62 Mo. 101. But equity decrees relief in such cases for the faithful performance of the contract, fully executed on one side.

The plaintiffs are here demanding this whole estate for the services rendered by Mrs. Teats in not exceeding *three years*—one year, after the death of Mr. Flanders, and two years after her marriage, when the evidence discloses she received full value for the character of services rendered, at that time. The burden was on plaintiffs to establish this agreement by evidence that was cogent, clear and convincing, and in this they have most signally failed. The evidence merely established that Mrs. Flanders made some casual remarks, from time to time, to some of her acquaintances as to her intentions in disposing of her property. They were not made to plaintiff, and were without consideration. The contract alleged cannot be established in this unsatisfactory way. *Berry v. Hartzell*, 91 Mo. 132.

It is assigned as error that Mrs. Teats was improperly excluded as a witness. She was most clearly incompetent to testify as to the contract with Mrs. Flanders, by which her title to the property must be established. Revised Statutes, 1889, sec. 8918; *Messimer v. McCray*, 113 Mo. 382. The offer of this evidence appears in the record as follows:

"The plaintiff was then offered as a witness in rebuttal of the evidence of John F. Tyler and the other witnesses, concerning letters testified to as having been written by plaintiff, after the death of Mrs. Flanders, which evidence was excluded by the court on the ground that plaintiff was not a competent witness in this case, to which ruling of the court the plaintiff excepted at the time."

As the only purpose was to rebut the evidence tending to show she had written the letters advising Mrs. Flanders of her sister's death, and telling her to look after her interests, their general purport, and loss, it could not have materially changed the result, and moreover the offer was not confined to *acts done since the appointment of the administrator, as to which alone she was competent*. Revised Statutes, 1889, sec. 8918. The offer did not bring her within the statute and she was properly excluded. *Wade v. Hardy*, 75 Mo. 394.

The judgment of the circuit court appears to be for the right party, and is affirmed. All the judges of this division concur.