*D. Mace,* for appellant.

---

## Adams *v.* Adams' Administrator.

CONTINUANCE.—Where the defendant applied for a continuance which was refused at the time of the application, but granted during the term, the error, if any, in first refusing it, was cured.

PLEADING—PROOF.—When the complaint was in the general language of the common count, and the bill of particulars was in the same general language, thus: "*A* to *B, Dr.* To fourteen years, seven months' service, work, and labor, ending on *December* 25, 1860, of the value of $3,000;" it was held that evidence was admissible of the character in which the services were rendered, viz: as foreman and general manager, and of their value thus rendered, which value could be deduced from all the circumstances, including success or failure to make money by them, as one.

CHILD—SERVICES OF.—Where a child continues with the parent after being of age, the presumption is, no wages are to be paid, but a contract to pay a reasonable compensation may be inferred from circumstances tending to rebut the presumption.

WIDOW—COMPETENCY OF.—A widow is a competent witness to give general testimony, it not being for or against her husband, in a cause brought by her husband's administrator.

Adams *v.* Adams' Administrator.

APPEAL from the *Cass* Common Pleas.

PERKINS, J.—*Atkinson*, administrator of *James Adams*, deceased, sued *James Adams*, senior, father of said deceased, on the common counts, for work and labor, money paid, property sold, etc. *Adams*, the defendant, answered by general denial and by way of set-off, averring demands against the deceased. The pleadings seem to have arrayed all the respective demands of the parties, so that the verdict and judgment in the case closed all pecuniary controversies between them.

The material facts in the case, as shown in evidence, are these.

*James Adams*, senior, was located in *Clinton* township, *Cass* county, *Indiana*, about the year 1845, with his family, consisting of himself, wife, one daughter, and a son, *James Adams*, junior, who was then about twenty-one years of age. *Adams*, senior, was then about fifty-four years old, and worth about $2,000. The son *James* continued to live with his father for about three years, when he married and moved into a house of one *Clymer*, where he remained a short time, and then moved into a cabin on his father's land, and near to the house in which his father lived, where he continued with his family till his decease, in 1860. While thus living upon his father's place, the families of father and son all worked together, and had all things in common. There is no proof of any express contract between the father and son; but, directly after moving upon the place, the son assumed the entire control and management of all the business, managing the farm, buying and selling property, hiring help, and paying the wages, etc., and continued thus to manage till his death, being a period of some eleven or twelve years. During this time the father worked upon the place, but did not attempt to interfere with the son's control of all business transactions. The son's management and operations were very successful, and, besides supporting both families, resulted in an addition of about $5,000 to the father's $2,000 of capital,

$1,000 of which the son invested in land, taking the deed in his own name, with, so far as appears, the consent of the father.

On the death of the son, the father claimed to be the owner of all the property, except the land purchased with the $1,000 as above described, and to be the creditor of the son for that amount of money.

*Atkinson,* the plaintiff below, administrator of *Adams,* the son, instituted this suit against *Adams,* the father, to recover compensation for the services of the son during the years he worked with the father as an adult, and he recovered $2,000 over and above the $1,000 invested in land by the son as above shown.

At a given term of the court, the defendant applied for a continuance, which was refused on the application, but granted, for other reasons, during the term. The error, therefore, in first refusing it, if error there was, was cured.

Many objections were made to the admission of evidence; and the validity of the objections depended upon a question arising upon the complaint. The paragraph of that for work and labor and service was in the general language of the common count at common law; and the bill of particulars was in the same general language, thus: "*James Adams,* sen., to *James Adams,* jr., Dr. To fourteen years and seven months' service, work, and labor, ending on *December* 25, 1860, of the value of $3,000."

No motion was made by the defendant to have the paragraph or bill of particulars made more certain.

The defendant contends that, under the pleading, as drawn, no evidence was admissible except of service in the capacity of an ordinary laboring man; while the plaintiff contends that evidence was admissible of the character in which the deceased rendered the services—viz : as the foreman and general manager—and of their value thus rendered, which value, in money, could be deduced from all the circumstances, including the success or failure to make money by them, as one.

We concur in this latter view of the question. We think the defendant should have moved that the bill of particulars be made more certain, specifying the kind of service, etc., whereby the plaintiff might have been restricted in his evidence to the kind named. As it was, the bill being general, so might be the evidence.

In the 2d vol. of Chit. Pl., 9th Am. ed., pp. 65 and 75, it is said in the notes that, "at common law, the general count for work and labor, etc., will suffice to recover for almost any kind of service; that in the case of *Fisher* v. *Snow*, 3 Dowl. Rep. 29, it was considered that, under a count for work done and materials furnished, an attorney might recover his fees for conducting an action or defense, and for preparing deeds," etc. Under this view we do not discover any rulings of the court that could have harmed the defendant, and the verdict of the jury was within the evidence.

It is a general rule that where a child continues with the parent after becoming of age, no express contract for wages being shown, the presumption is, no wages are to be paid. But a contract to pay a reasonable compensation may be inferred from circumstances tending to rebut the presumption that there is to be no compensation. 3 Ind. 156; Davis' Dig. 237, 641.

The jury were properly instructed on this point, and, upon the evidence, we can not say the jury could not infer compensation was to be made. The widow of the deceased Adams was offered as a witness in the cause, by her husband's administrator, and she was admitted. It is not objected that she was offered for the purpose of disclosing matters between husband and wife. We think she was competent as a witness for giving general evidence, it not being for or against her husband. 8 Ind. 180; Davis' Dig. 847; 21 Ind. 37, 398, 454.

During the progress of the trial, a record of a suit between *Adams* and *Atkinson* was offered in evidence, as containing a claim by said *Adams*, sen., that all the property

on the place, at his son's death, belonged to him. The record was not offered or admitted as evidence of an adjudicated point. The evidence was relevant to the issue being tried, as tending to show that the son was working for the father, not for himself. Another record of proceedings between the parties in the case at bar was offered in evidence, and rejected.

The record of the case before us does not disclose the purpose for which the record of former proceedings was offered, nor the reason why it was rejected. As a record of an adjudicated point, the proceedings were not evidence, as the proceedings were dismissed by the plaintiff before any trial was had.

We perceive no good the proceedings could have done the defendant if admitted, nor harm that their rejection could occasion.

We discover no error that should reverse the judgment. If its collection will render the shares of the children of the elder *Adams* unequal, and he desires that these shares should be equal, it is in his power to make them so by voluntary disposition of his property.

Under the evidence, we can not say the damages given by the jury were excessive.

*Per Curiam.*—Judgment affirmed, with one per cent. damage and costs.

*W. Z. Stuart*, for appellant.

*D. D. Pratt* and *D. P. Baldwin*, for appellee.

