ELIZABETH KOCH, Respondent, v. JACOB HEBEL, Administrator of WILLIAM KOCH, Deceased, Appellant.

Kansas City Court of Appeals, October 29, 1888.

1. **Family Membership**: SERVICES USUALLY GRATUITOUS: IMPLIED CONTRACT. Notwithstanding the fact that family membership, in itself, implies that services rendered in the family are gratuitous and without the expectation of pecuniary reward, the promise to pay may be implied from any facts and circumstances which in their nature justify the inference of an actual contract of hiring or an actual understanding between the parties to that effect. But the evidence of an implied contract, in such case, should be clear and satisfactory.

2. **Contract**: SERVICES PERFORMED UNDER PROMISE OF DEED, ETC.: HOW ENFORCED. Where a plaintiff has performed services under an agreement that remuneration will be made therefor, by deed or will, conveying land to such plaintiff, specific performance may be maintained against the heirs of the promisor; or an action at law against his personal representative. In an action at law recovery should be limited to actual value of land.

3. **Administration**: DEMANDS PRESENTED FOR ALLOWANCE: AFFIDAVIT NOT EVIDENCE. Although the statute (R. S., secs. 195, 196) requires that all demands presented for allowance against the estates of deceased persons shall be supported by the affidavit of the claimant, it also provides that the affidavits shall not be received as any evidence of the demand, but that the same shall be established by competent, legal testimony, before it is allowed or adjusted.

4. **Practice**: ARGUMENT TO JURY: MISCONDUCT OF COUNSEL IN DISCUSSING EVIDENCE: CASE ADJUDGED. Where counsel for plaintiff, in this case, alluded to the statutory affidavit required in the presenting of demands for allowance as proof of such claim, in the face of the provisions of the statute that it shall not be received as any evidence of the demand; the court is impelled to *hold* that such action calls for a reversal of the judgment.

*Appeal from Johnson Circuit Court.*—HON. CHARLES W. SLOAN, Judge.

REVERSED AND REMANDED.

The case is stated in the opinion.

*S. T. White* and *O. L. Houts*, for the appellant.

(1) The statement of plaintiff's claim sets forth a legal liability created by the law itself, and not by any mutual understanding and agreement between plaintiff and the deceased. After the opening statement of plaintiff's counsel that she was his daughter living with her father, keeping house for him and thus performed the service sued for, her right to recover on a *quantum meruit* was barred, and the court should not have heard any evidence in support of her claim. And she, having declared in this form of action, could not prove a special contract (which she must do if she can recover) in support of her statement. Bishop on Contracts [Eng. Ed.] secs. 184, 185, 187, 223, and authorities cited below. (2) There was no evidence offered by plaintiff tending to show that while plaintiff was living with her father as his housekeeper, she expected to receive any other compensation other than what she was daily receiving, and the court should have sustained the demurrer to plaintiff's evidence. Authorities cited below. (3) Even if there might arise a scintilla of a presumption of an intended payment by her father, the whole facts are so explanatory of each other that the presumption was fully rebutted, and a verdict and judgment on the whole case should have been directed in favor of defendant. Authorities below. (4) If the proof tended to show anything it is that plaintiff expected a legacy or a gift of the house and lot in Holden. Such proof does not tend to support this demand. And the proof offered if competent to establish her demand is only of bare declarations of a doubtful nature, and doubtfully supported by testimony, and is not such as is required by law. As these propositions are so intertwined in the judicial decisions of this class of cases, it was thought best to present them together. *Guenther v. Birkicht's Adm'r*, 22 Mo. 439 ; *Smith v. Myers*, 19 Mo. 434 ; *Hart v. Hart's*

*Adm'r*, 41 Mo. 445; *Cowell v. Roberts*, 79 Mo. 218; *Gardner's Adm'r v. Schooley*, 25 N. J. Eq. 150; *Prickett v. Prickett*, 20 N. J. Eq. 478; 15 Cent. Law Jour. 26; *Cooper v. Cooper*, 3 Ill. App. 492; *Sanders v. Waggonseller*, 19 Pa. St. 248; *Luney v. Vantyne*, 40 Vt. 501; *Ryan v. Lynch*, 9 Mo. App. 18. As to requisite proof: *Duffey v. Duffey*, 44 Pa. St. 398; 3 Wait's Actions and Defenses, 584; *Hartman's Appeal*, 3 Grant's Cases (Penn.) 234. As to expectation of legacy or gifts: *Osborne v. Hospital*, 2 Strange, 728; *Hiatt v. Williams*, 72 Mo. 214; *Sutton v. Hayden*, 62 Mo. 101; *Gupton v. Gupton*, 47 Mo. 37. As to waiving special contract and suing on *quantum meruit*: *Stottling v. Sappington*, 8 Mo. 118; *Chambers v. King*, 8 Mo. 517. (5) The burden of proof was on plaintiff, and the court erred in refusing an instruction of defendant to that effect. The court also erred in refusing other instructions asked by defendant which presented fairly all the issuable facts. (6) The court should have rebuked the counsel for plaintiff for making the remarks in his closing argument to the jury, which were objected to; and should have instructed the jury that they must not take into consideration the affidavit of plaintiff to her claim, in making up the verdict. *Marble v. Walker*, 19 Mo. App. 134; *Brown v. Railroad*, 66 Mo. 599; *Miller v. Dunlap*, 22 Mo. App. 97; *Holliday v. Jackson*, 21 Mo. App. 660; *Ritter v. Bank*, 87 Mo. 574. The affidavit of plaintiff to her claim in probate court was no evidence whatever, and being attached to the claim and going with it to the jury-room, would work an influence on them when accompanied by such remarks. R. S. 1879, sec. 196.

*A. B. Logan* and *J. P. Orr*, for the respondent.

(1) The court did not err in giving plaintiff's instructions. *Reando v. Misplay Adm'rs*, 90 Mo. 251; *Hart v. Hart's Adm'r*, 41 Mo. 445. (2) The doctrine in this case is well settled in Missouri, and needs no outside authorities. In this case it is a question for the

jury, taking into consideration all the circumstances, including the nature and degree of relationship and the circumstances in life of the parties, whether there was an implied contract for compensation. *Hart v. Hart's Adm'r*, 22 Mo. 445; *Guenther v. Berkicht, Adm'r*, 22 Mo. 439; *Smith v. Myers*, 19 Mo. 434; *Cowell v. Roberts*, 79 Mo. 218; *Reando v. Misplay*, 90 Mo. 251. (3) The doctrine that after the attainment of majority, the promise to support the obligation to pay must be an express one, has not been accepted in this state. *Cowell v. Roberts*, 79 Mo. 218; *Reando v. Misplay*, 90 Mo. 251. (4) The court did not commit error in refusing defendant's instructions as asked, as the law of the case under the evidence was fairly presented to the jury by the instructions given at the instance of the plaintiff, and the instructions numbered ten, eleven and twelve, given by the court of its own motion, which last three mentioned instructions were favorable to defendant. *Hart v. Hart's Adm'r*, 41 Mo. 455; *Cowell v. Roberts*, 79 Mo. 218; *Reando v. Misplay*, 90 Mo. 251. (5) The court did not err in refusing to rebuke plaintiff's counsel for using the language complained of, to-wit: "The law closes her mouth; all she can say she says in this affidavit, when under her solemn oath she says this amount is correct and just and she has given the estate all credits it is entitled to." It was merely referring to a fact in the record, called out by defendant's counsel, and could not affect the standing of the record before the jury one way or the other.

RAMSAY, J.—This action was tried in the probate court of Johnson county, in May, 1887, upon a demand presented by plaintiff for allowance against the estate of William Koch, deceased, which was in words and figures following:

"Estate of William Koch, deceased, to Elizabeth Koch, Dr.

"To nine years' work and labor for said William Koch commencing on the first day of November, 1876,

at the special instance and request of said Wm. Koch, $1,000.00."

"State of Missouri, }
} ss.
"County of Johnson, }

"Elizabeth Koch being duly sworn, upon her oath says to the best of her knowledge and belief, she has given credit to the estate of Wm. Koch, deceased, for all payments or offsets to which it is entitled on the demand above described, and that the balance therein claimed is justly due.

"[Signed]                              LIZZIE KOCH.

"Subscribed and sworn to, etc.

"J. P. ORR, Notary Public."

The trial resulted in a judgment for plaintiff, from which defendant appealed to the circuit court of said county, where, in June following, it was again tried, resulting in a verdict and judgment for plaintiff for the sum of one thousand dollars, from which judgment the defendant has appealed to this court.

At the trial when plaintiff's counsel made a statement of the case to the court and jury, in which it was stated that the plaintiff was a daughter of William Koch, deceased, and had performed the work and labor mentioned in her demand, as such, the defendant's counsel objected to the introduction of any evidence under the statement, for the reason that plaintiff could only recover on a special contract to be proved, and not on a *quantum meruit*. The court overruled this objection, and the defendant excepting urges this ruling as the first ground for reversal. We do not think this objection was well taken. Notwithstanding the fact that family membership in itself implies that such services are gratuitous and without the expectation of pecuniary reward, the promise to pay may be implied from any facts and circumstances which in their nature justify the inference of an actual contract of hire, or an actual understanding between the parties to that effect. Hence in a similar case to this, it is said: "We would not be

understood as laying down the law so as to require the plaintiff to procure proof of an *express* produce on the part of Birkicht (the person sought to be charged) to pay the plaintiff for his services after he became of age, or to produce proof of a *specific contract* for that purpose." *Guenther v. Birkicht's Adm'r*, 22 Mo. *loc. cit.* 448. That the principle here expressed governs this class of cases is shown in the following cases : *Smith v. Myers*, 19 Mo. 433 ; *Hart v. Hart*, 41 Mo. 441 ; *Cowell v. Roberts*, 79 Mo. 218 ; *Reando v. Misplay*, 90 Mo. 251. The evidence of an implied contract should always be clear and satisfactory and not depend upon mere loose declarations. *Woods v. Land*, 30 Mo. App. 176.

It appears from the evidence that in the fall of 1876 William Koch, and his wife Sarah, both well advanced in years, were living on a farm near Holden, Mo., that plaintiff, their daughter, then of age, was working out in the family of Fred. Burkharth, earning for sewing three dollars per week and when doing general housework two dollars per week ; that plaintiff's mother was at this time sick and plaintiff left Burkharth's and returned to her father's home, but whether at the request or solicitation of her parents does not distinctly appear in the testimony. The evidence introduced by plaintiff tends to establish the fact that from this time plaintiff lived with her parents upon the farm until after her mother's death, which occurred some time after plaintiff's return, and that she continued to reside with her father for a short time on the farm, and then in a residence which he purchased in the town of Holden, up to the time of his death, which occurred in August, 1886 ; that during all of this time, excepting a period of eight months, when plaintiff was absent on a visit, she did housework, chores, and nursed and cared for her parents, and at times tended the garden, at other times did fancy needlework and waxwork which she sold ; that she was good to her parents and industrious, and her services were variously valued by her witnesses at

from one dollar and fifty cents to three dollars per week.

It was shown that the father on several occasions talked with the witnesses about plaintiff's care of him—saying to Barbara Ulrich, in answer to her inquiries as to what he intended to do for plaintiff, "Lizzie's all right; this is her home." To E. W. Affield, when asked if the Holden property was in Lizzie's name, he said it was not and on being advised to sign it over to her, or to make a will, he said: "Well, I don't know; I've got time enough; I'll give it to her to take care of me as long as I live." The witness Affield stated that he talked many times with the father about his compensating plaintiff, and that he said he gave her that property for her work (referring to the Holden property). The evidence of Robert Cluck and William Koch is to the same effect.

The only evidence introduced by plaintiff which seems to conflict with the foregoing statements appears in the cross-examination of Fred Burkharth. This witness said: "Mr. Koch said, when I solicited him to make provision for plaintiff, that the children might get along and settle the matter. I tried to persuade him to make a will and provide for plaintiff. I could not get him to make a will. He said that if they could not settle it, they might go to law. He said he wanted to treat them all alike, and said she ought to have her share, and if the children did not want to provide for her, to let them law. He said this several times." The evidence of Burkharth has a tendency to render uncertain what the intention of the father really was. But upon a careful consideration of the plaintiff's evidence we are of the opinion that the court properly overruled defendant's demurrer to such evidence. The circumstance of plaintiff's being away from home working for herself, and returning to care for her parents (*Andrus v. Foster*, 17 Vt. 556); the conversation between the father and the witnesses above named concerning plaintiff's services, all taken together, presented a case to be submitted to the jury.

In this connection it may be said that counsel for appellant contend that, if plaintiff's proof tended to establish any fact, it was that plaintiff expected a legacy or a gift of the house and lots in Holden, and that if such was her expectation or the understanding between plaintiff and her father, plaintiff could not waive the contract to that effect and sue on an implied contract for the value of her services. While it is true that the supreme court of this state has decided that, when a plaintiff has performed services under an agreement that remuneration therefor will be made by deed or will conveying land to such plaintiff, that specific performance may be maintained against the heirs of the promisor (*Sutton v. Hayden*, 62 Mo. 101 ; *Sharkey v. McDermott*, 91 Mo. 647); we see no valid and sufficient reason why a remedy by an action at law against the personal representative of William Koch, for the value of services rendered, does not also exist. *Robinson v. Raynor*, 28 N. Y. 494; *Reynolds v. Robinson*, 64 N. Y. 589 ; *Wallace v. Long*, 105 Ind. 522 ; *Freeman v. Freeman*, 65 Ill. 106. If such a contract or understanding was shown by the evidence to have existed, the plaintiff could not recover in her suit a sum greater than the value of the house and lots in Holden. *Crump v. Redstock*, 20 Mo. App. 37; *Suits v. Taylor*, 20 Mo. App. 166.

The defendant's evidence was contradictory of plaintiff's theory and tended to show that the plaintiff lived with her father as a member of his family without expectation of, or agreement for, remuneration for her services. It was shown that William Koch was the father of seven children, and that on different occasions the sisters of plaintiff, who were also grown, would return to their father's home and would work and care for him without charge. Susan, it appears, returned after she had been working for herself and remained with her father from January, 1885, until in May, 1886, doing cooking, washing, and general work ; that during this period plaintiff was absent in Chicago and Indiana

between eight and nine months, that after she returned to Missouri, she spent seven weeks visiting. It further appeared that plaintiff received, for her own use, the proceeds arising from the sale of butter, milk, meat, lard, etc., sold off of the farm, as well as the price of her sewing, fancy crotcheting and waxwork, and at times kept boarders, for which she received the pay. Her sisters testify that their father provided for the family, that Maggie Cluck lived with and worked in the family up to the time that the father moved into Holden, and that plaintiff told their father, that if he would move to town, she, plaintiff, could make her own living, aside from doing work for him. We deem it unnecessary to state further evidence.

The court for plaintiff gave the following instructions:

"The court instructs the jury, that where services are rendered and received, a contract of hiring or obligation to pay will be presumed, but a presumption may arise from the relationship of the parties that the services rendered are acts of gratuitous kindness; and in this case it is a question for you, taking into consideration all the circumstances, including the nature and degree of relationship of the parties and their circumstances in life, to determine whether there was any implied contract for compensation or not, and if you believe from the evidence that the services were acts of gratuitous kindness, there was no implied contract. Now if you find that plaintiff rendered services to the father and mother, or either or both of them, in taking care of them and waiting on them during the time sued for, and that she intended, while rendering such services, to charge the father, and that the father intended to compensate her for the same, then you will find for the plaintiff, and allow her on your verdict such sum as you may believe from the evidence she is entitled to, not exceeding the sum of one thousand dollars."

"The court instructs the jury that they are the sole and exclusive-judges of the weight of evidence and the

credibility of the witnesses, and in determining the weight that should be given to the testimony of any witness in this case, they may take into consideration his or her interest in result of the suit, as well as their manner and deportment while giving testimony."

After refusing a number of instructions asked by the defense, the court of its own motion gave the following instructions, numbered ten, eleven, and twelve, to which defendant excepted:

"10. Even if you find that plaintiff is entitled to recover, yet she can only recover for such services as were rendered by her after there was an understanding and agreement with her father that she was to receive wages for her services.

"11. The fact that the plaintiff is the daughter of Wm. Koch, deceased, raises the presumption that the services were acts of gratuitous kindness, for which she was not entitled to pay, unless she has shown, by the weight of evidence, that there was an understanding and agreement with her father that she was working for wages, and that she was to receive pay therefor, she cannot recover, and you will find for defendant.

"12. The court instructs the jury that the plaintiff, in order to recover, must show affirmatively by the weight of evidence that she and her father had an agreement and understanding that he was to pay her wages for keeping house for him and waiting on and taking care of him and his wife, or either of them, and that she was not to live with him as a member of his family, and although this agreement and understanding may be proved by facts from which it may be implied, yet these facts must show to the satisfaction of the jury that such understanding existed."

The first instruction above set forth should have limited the amount of recovery to a sum not exceeding the value of the Holden property, in case the jury believe that the contract proved by plaintiff was that she was to receive said property for her services.

In other respects, the instructions given fairly presented the case to the jury and conform to the principles governing this class of cases. *Sutton v. Hayden, supra ; Reando v. Misplay,* 90 Mo. 251. We discover no error in the court's refusal of instructions. In argument to the jury, counsel for plaintiff made use of the following language : " Counsel for defense ask you why we haven't proved by direct testimony the contract between plaintiff and her father? The law closes her mouth. All she can say, she says in this affidavit, where, under her solemn oath, she says this account is correct and just, and she has given the estate all credits it is entitled to."

Defendant objected to the use of such language at the time, because, under the practice, the jury would take the affidavit to their room, and would be misled, and give to it greater weight than competent evidence, and asked the court to correct it, which was refused, and exceptions taken.

Section 196, of the Revised Statutes, which, with section 195, provides that all demands presented for allowance against the estates of deceased persons in this state shall be supported by the affidavit of claimants, closes with these words : "And the affidavit in this section and the preceding one shall not be received as any evidence of the demand, but the same shall be established by competent, legal testimony before it is allowed or adjusted."

Section 4010 of the statute expressly prohibited the plaintiff from giving testimony in her own favor. In view of these plain statutory provisions, it is a matter of some astonishment that counsel should, in their zeal, so far overstep the bounds of propriety as to press upon the attention of the jury a matter they must have known was not legal evidence, nor to be in any manner considered as such. Not unfrequently do good lawyers, in the excitement of discussion, transcend the limits of evidence introduced upon a given point at issue.

VOL. xxxii—8

Emphasis is bestowed when indifference was expressed by the witness, and a richer coloring is frequently given than the bare statements deserved. This must to a great extent be so, and will be, as long as the art of expression, presentation, and illustration is one of the charms of advocacy. But where a paper is absolutely no evidence, or a matter is offered which has been by the court ruled out as in competent, or, as in this instance, a matter which the statute has singled out and said "shall not be received as *any evidence* of the demand," it is difficult to frame an excuse or apology for its use in argument to a jury. In *Brown v. Railroad*, 66 Mo. 588, the court said : "The practice of traveling out of the record in an address to a jury, and in making statements of facts which there was no evidence tending to prove, has been often condemned, and in a case of gross misconduct in this regard, this court should reverse a judgment obtained by the party whose attorney should so conduct himself." In *Ritter v. Bank*, 87 Mo. 574, plaintiff's counsel, over the objection of defendant's counsel, was permitted to comment on statements theretofore made by his client, which had been excluded by the court, and the court say : "In the present instance, the improper course pursued by counsel in this regard may have turned the scale in plaintiff's favor, as the evidence in his behalf was scarcely so strong as that on behalf of defendant." The cause was reversed. A similar ruling was made in *Marble v. Walker*, 19 Mo. App. 134. In the *Marble-Walker case*, the trial court endeavored to remedy the evil by giving an additional instruction withdrawing the objectionable matter from the jury. Yet the judgment was reversed for that error. Though the case at bar might have been decided either way by the jury, upon the evidence fairly argued, the controlling question involved was, whether plaintiff performed the services for her father under a contract or agreement, express or implied, that her father should pay her the reasonable value of the same. At best this question, in view of all the evidence, was somewhat doubtful. The very sense of

doubt and uncertainty which impelled counsel to urge plaintiff's affidavit before the jury, as evidence of this understanding between plaintiff and her father (in harmony with the rulings of our supreme court before cited), impel us to hold that such action on part of plaintiff's counsel was reversible error.

The judgment of the lower court, for the reasons herein stated, is reversed, and the cause is remanded. All concur.