W. Q. BELL, ADMINISTRATOR, V. ANNA RICE ET AL.

FILED FEBRUARY 3, 1897.   No. 7071.

1. **Parent and Child:** SERVICES: EVIDENCE. Generally where a child renders services for a parent, the family relation existing at the time, the law presumes, by reason of the kinship of the parties and such family relation, that such services were gratuitously rendered.

2. ———: ———: ———. Such presumption is not a conclusive one, and the child may recover the value of the services rendered if the evidence shows that they were rendered under such circumstances as to justify the inference of a contract on the part of the parent to pay for them.

3. ———: ———: ———. Whether the evidence warrants such a conclusion is a question for the jury.

4. ———: CARE OF IMBECILE: COMPENSATION: NECESSARIES. A stepfather residing in the state of Illinois became an imbecile. No conservator was appointed for him. At the request of those who had charge of his property and business his stepdaughter caused him to be brought to the home of herself and husband in the state of Nebraska, where he remained until his death, some ninety weeks afterwards. During this time the stepdaughter furnished him boarding, lodging, medicine and medical attendance, and such care as his demented condition required. For these services she filed a claim against his estate. *Held,* That the services rendered to the stepfather were necessaries for which his estate was liable.

5. **Statute of Limitations:** REVIEW. The defense of the statute of limitations is a meritorious one, but one that may be waived; and if it is not insisted upon in some manner in the trial court it will not be considered here for the first time.

6. **Gift of Money to Father From Child:** SETTLEMENT OF ESTATE: INTEREST. A brother gave to his sister his note for $1,000. The brother died and the note was filed and allowed as a claim against his estate, and his administratrix, on settling the estate, paid said claim in full to the father of her intestate's sister. The daughter was at the time living with her father, and the money was paid to and retained by him with her knowledge and consent, without any agreement on his part to pay interest for the use of said money or to repay it at any particular time. After the father's death the daughter filed a claim against his estate for this money. *Held,* (1) That the evidence warranted the conclusion that the money was not a gift by the daughter to the father; (2) that it was not money which the father was entitled to appropriate to himself by reason of the relation existing between himself and daughter;

(3) that the transaction was in the nature of a gratuitous loan to the father; (4) that the money was payable to the daughter on demand; (5) that her father's estate was liable to her for the claim, but as she made no demand for its payment during the lifetime of her father, her claim should only draw interest from the date she filed it against the estate.

ERROR from the district court of Lancaster county. Tried below before STRODE, J. *Modified.*

*Abbott, Selleck & Lane,* for plaintiff in error:

The estate of a parent is not chargeable for either services rendered by, or for money received from, a child or stepchild, unless it is shown that there was an express promise made by the parent to pay for such services or to refund such money. (*Woods v. Land,* 30 Mo. App., 176; *Barhite's Appeal,* 126 Pa. St., 404; *Havens v. Havens,* 3 N. Y. Supp., 219; *Wright v. Senn's Estate,* 48 N. W. Rep. [Mich.], 545; *Harris v. Currier,* 44 Vt., 468; *Allen v. Allen,* 60 Mich., 635; *O'Kelley v. Faulkner,* 17 S. E. Rep. [Ga.], 847; *Puterbaugh v. Puterbaugh,* 34 N. E. Rep. [Ind.], 611; *Ellis v. Cary,* 42 N. W. Rep. [Wis.], 252; *Smith v. Rogers,* 24 Kan., 140; *Wells v. Perkins,* 43 Wis., 164; *Keegan v. Malone,* 17 N. W. Rep. [Ia.], 461; *Tyler v. Burrington,* 39 Wis., 376; *James v. Gillen,* 30 N. E. Rep. [Ind.], 7.)

*W. E. Stewart* and *Tibbets Bros., Morey & Ferris, contra.*

References: *Smith v. Meyers,* 19 Mo., 433; *Hall v. Hall,* 44 N. H., 293; *Adams v. Adams,* 23 Ind., 50.

RAGAN, C.

In the county court of Lancaster county, sitting as a court of probate, Sophia Mills and Anna Rice each filed a claim against the estate of Thomas H. Rice, deceased. From the judgment of the county court allowing these claims the administrator of the estate refused to appeal, whereupon certain heirs of the estate, in pursuance of the provisions of the statute, appealed from the judgments of the county court to the district court. The two claims

were there tried without pleadings. They were tried together to the court without a jury. The district court allowed the claims of Sophia Mills and Anna Rice against the said estate, and said heirs have filed here a petition in error to review the action of the district court.

1. We will first direct our attention to the claim of Sophia Mills. She claimed that the estate was indebted to her in the sum of $1,350 for boarding, lodging, and caring for the deceased for the ninety weeks immediately preceding his death, on which claim she admitted that she had been paid $862.91, leaving a balance due her of $867.19. By the judgment of the district court she was awarded $311.95. The evidence shows that Mrs. Mills in 1887 resided with her husband in Waverly, Nebraska; that she was the stepdaughter of the deceased, who at that time resided in Monmouth, Illinois; that in September, 1887, the deceased became an imbecile. The management of his affairs and estate was taken charge of by certain of his friends in Illinois, though no conservator or guardian was appointed for him. About this time, at the suggestion of those having charge of the estate and the affairs of the deceased, Mrs. Mills caused him to be brought to her house in Nebraska, where he remained until he died, some ninety weeks afterwards. During this time Mrs. Mills boarded, lodged, and cared for him, and furnished him medicine and medical attendance. It was necessary, owing to his lack of the use of his mental faculties, to keep a constant watch upon him to prevent his straying away. He had lost power to control and direct the functions of his body and had to be waited upon like an infant; and the evidence shows that the services of Mrs. Mills in the premises were reasonably worth from $10 to $30 per week. It is urged against the judgment of the district court that its finding is unsupported by sufficient evidence. It is first said that the evidence does not warrant the amount awarded Mrs. Mills. Adding the amount of money received by her from the estate of the deceased during his lifetime to the amount awarded

her by the court, we have a total of $1,174, which Mrs. Mills has received for her services in the premises. This amount the evidence justifies. But it is said that the evidence does not disclose an express promise on the part of the deceased to pay Mrs. Mills for her services, since she was his stepdaughter and the deceased lived with her in her family; that a family relation existed between them, and that the presumption is that the services rendered by Mrs. Mills were gratuitously rendered because of the relation existing between herself and the deceased. But this evidence does not bring Mrs. Mills' case within the rule that where services are rendered by a child for a parent, the presumption is such services were rendered gratuitously because of the relation existing between the parties. The deceased was not a visitor at the house of Mrs. Mills, nor was he at her house because he had been invited by her to come there and make it his home. If because of the relationship of Mrs. Mills to the deceased the law presumes that the services rendered by her were gratuitously rendered, still this was not a conclusive presumption; and we think that the services of Mrs. Mills were rendered under such circumstances as to overthrow this presumption and justify the application to this case of the general rule that where services are rendered by one party for another, and knowingly accepted by him, the law will imply a promise on his part to pay what such services are reasonably worth. (*Smith v. Myers*, 19 Mo., 433.) In *Koch v. Hebel*, 32 Mo. App., 103, a daughter filed a claim against her father's estate for services rendered by her for him in his lifetime. The evidence showed that while the daughter was away from home working for herself her mother was taken ill; that the daughter then returned to the home of her parents, but whether at their request did not appear, and remained with and cared for them until the death of the survivor, and that her father had on certain occasions spoken of compensating her for these services. The court held that because of the family relationship

existing between the claimant and the deceased the law
presumed that the daughter had rendered the services
she did gratuitously, but nevertheless, it was for the jury
to say from this evidence whether the services were in
fact rendered gratuitously by the daughter, or under
such circumstances as to justify the inference of an actual
contract of hiring the daughter by the deceased.   To the
same effect see *James v. Gillen*, 30 N. E. Rep. [Ind.], 7. ˙ In
*Davidson v. Westchester Gas Light Co.*, 2 N. E. Rep. [N. Y.],
892, it was held that an implied promise to pay for serv-
ices would be held to exist where the services were ren-
dered under such circumstances as justified the party
rendering them in entertaining. reasonable expectation
of their payment by the party soliciting the performance.
In *Adams v. Adams*, 23 Ind., 50, it was held that where a
child continues with a parent after being of age the pre-
sumption is that no wages are to be paid; but a contract
to pay a reasonable compensation might be inferred from
circumstances tending to rebut such presumption.   In ˙
*O'Kelly v. Faulkner*, 17 S. E. Rep. [Ga.], 847, it was held
that in order to authorize a recovery by a son against the
estate of his deceased father for services in the nature of
care and attention to the latter while old and infirm, it
must affirmatively appear either that the services were
rendered under an express contract that the son was to
be paid for them, or, the surrounding circumstances must
plainly indicate that it was the intention of both parties
that compensation should be made and negative the pre-
sumption of law that by reason of the family relation the
services were gratuitously rendered.   In *Byers v. Thomp-
son*, 66 Ill., 421, a son placed a house on his father's land
in the lifetime of the latter.   After the father's death
the son filed a claim against his estate to recover the
value of the house.   The court held that the son's right
to recover depended upon whether he expected to be
paid therefor at the time he placed the house on the
farm, and the father expected to pay him, and that this
must be determined from all the evidence in the case;

and the court expressly held that it was not necessary to enable the son to recover that the proofs should show an express contract with his father to pay for the house. We conclude, therefore: (1) That where a child renders services for a parent, the family relation existing at the time, the law presumes by reason of the kinship of the parties and such family relation that such services were gratuitously rendered; (2) that such presumption is not conclusive, and that the child may recover the value of the services rendered if the evidence shows that they were rendered under such circumstances as to justify the inference of a contract on the part of the parent to pay for them; (3) and whether the evidence warrants such conclusion is for the jury. (*Hill v. Hill*, 23 N. E. Rep. [Ind.], 87.) In the case at bar the deceased was incapable of caring for himself. The services rendered for him by Mrs. Mills, the boarding, lodging, medicine, medical attendance, and clothing furnished to him by her were necessaries; and though there was no express contract on his part to pay for these necessaries, and, if the evidence was insufficient to justify the inference of a presumption on the part of the deceased to pay for the services rendered, still the judgment of the district court was right. (*Reando v. Mosplay*, 2 S. W. Rep. [Mo.], 405.) The judgment of the district court in favor of Mrs. Mills is affirmed.

2. The district court by its judgment awarded Anna Rice a claim against the estate in the sum of $1,686.50. Her contention seems to have been that the estate was indebted to her for various sums of money which she had loaned the deceased in his lifetime, or which had come into his hands for her use, and it was for these sums of money and interest thereon that she based her claim. It is evident that the award made by the district court consists of an item of $500 and an item of $555.33, and interest on those items. No evidence was given or offered on the trial of any other items embraced in the claim of Anna Rice, and our consideration of the case

will be directed entirely to the question whether the district court was right in allowing the amount of these two items and interest thereon. It is first insisted that the judgment is erroneous because not supported by sufficient evidence. The evidence is somewhat unsatisfactory, and, as is usual in this class of cases, very meager, but we think it sustains the finding of the court that the estate of the deceased was indebted to Miss Rice in the sum of the two items of $500 and $555.33, and interest thereon. This evidence tends to show that Anna Rice was the daughter of the deceased, and in March, 1883, had a brother living, named William A. Rice. On the 26th of this month William executed his promissory note, payable to the order of Anna, for $1,000, due one year after date. Early in the year 1884 William died intestate in the state of Missouri and his widow was appointed his administratrix. At the time of William's death the note to Anna remained unpaid, as also certain other notes which William owed his father. The notes belonging to Anna's father and the note belonging to herself were sent to Missouri by a messenger, with instructions to file them against the estate of William Rice. The notes were so filed against the estate of William Rice, but by mistake were all filed and allowed as notes of Anna's father. When the administratrix of William Rice was ready to settle she discovered this fact, and then caused Anna to indorse her own note to her father. The amount of Anna's note allowed against her brother's estate was $1,055.33, and on the 3d of October, 1884, $500 of this money was by William's administratrix placed to the credit of Anna's father in a bank at Monmouth, Illinois, with which he did business; and on the 10th of February, 1885, $555.33, being the remainder of Anna's note, was placed to her father's credit in the Monmouth bank, with her knowledge and consent. Anna and her father at that time resided in the state of Illinois and he was then transacting business. About September, 1887, Anna's father lost the use of his mental faculties and he was brought to

the state of Nebraska and cared for by his stepdaughter until his death in 1889. It seems, also, that Anna came with him to the state of Nebraska and remained here until his death. Anna made no request of her father during his life to repay her the money put into his account by the administratrix of his deceased son, William. No express agreement existed between them that he should repay this money, nor that he should pay interest upon it. No attempt was made by the estate to show that this money, or any part of it, had ever been repaid to Anna. It is inferable from the evidence that the $1,000 note given to Anna by her brother was money that his father had put in his hands or loaned to him, and which was intended for Anna as a share or a part of her father's estate. This evidence then shows that Anna possessed in her own right $1,055.33 of money; that this money, with her knowledge and consent, went into the hands of her father; but we do not think that the money of Anna went into her father's possession under such circumstances as to warrant the conclusion that it was a gift by Anna to her father. It was not money that she had earned when a minor, and to which by reason thereof he might have been entitled; nor was it money which she had given him to be used for the support of himself and the family. Technically speaking, the father did not hold this money as bailee, and perhaps he was not a trustee of an express trust. The placing of this money in the father's possession by Anna was in the nature of a gratuitous loan to him; a *"commodatum,"* as it is sometimes called.

3. A second argument is that the claim of Anna for this money was barred by the statute of limitations. We will not consider this point, because not made in the court below. Contestants in the district court, neither by demurrer nor answer, raised any question as to the statute of limitations, nor did they object to the introduction of evidence in support of claims upon that ground. The statute of limitations is a meritorious de-

fense, but it is one that may be waived, and if it is not insisted upon in some manner in the trial court it will not be considered here for the first time. (*Scroggin v. National Lumber Co.*, 41 Neb., 195, and cases there cited.)

4. A final contention is that the amount of recovery permitted by the court is too large. We think this contention correct. The court allowed the two items mentioned above, with interest on the same from the date that the money went into the hands of the decedent. We think this was wrong. This money being in the hands of Anna's father with her knowledge and consent, she having loaned it to him gratuitously,—that is, without any agreement upon his part to pay interest for the use of it,—it was payable to her only on demand. The first and only demand she ever made for this money was when she filed her claim against the estate for it on the 12th day of March, 1890, and from that date, we think, the interest should have been computed. (*Duncan v. Magette*, 25 Tex., 245; *Morse v. Rice*, 36 Neb., 212.) The judgment is accordingly $385.02 too large. Miss Rice will have permission to remit that amount from the judgment within thirty days, and if she does so the judgment of the district court in her favor for $1,301.48 will be affirmed; the costs of this proceeding in this court to be taxed to Anna Rice.

JUDGMENT ACCORDINGLY.