B. VER STANDIG (PLAINTIFF), RESPONDENT, v. ST. LOUIS UNION TRUST COMPANY, EXECUTOR OF THE ESTATE OF CORA WEIL, DECEASED (DEFENDANT), APPELLANT.—62 S. W. (2d) 1094.

St. Louis Court of Appeals. Opinion filed September 12, 1933.

1244

*Bryan, Williams, Cave & McPheeters* for appellant.

*Donnell & McDonald* and *George F. Wise* for respondent.

BENNICK, C.—This is a proceeding which arises upon a claim filed in the Probate Court of the City of St. Louis against the estate of Cora Weil, deceased, to recover for services rendered by plaintiff to the deceased during her lifetime. The plaintiff or claimant, B. Ver Standig, is by marriage the nephew of the deceased, his wife having been her niece.

Originally the deceased was the wife of one Julius Leon, who died on October 15, 1917. On February 2, 1923, the deceased was married to Julius Weil, who survived her, and was originally one of the executors of her estate. The death of the deceased occurred on November 12, 1929.

The written statement of the claim, which is quite lengthy, sets up that for approximately two months following the death of Julius Leon, plaintiff rendered numerous services of a business and personal nature to the deceased, including such matters as the renting of her real estate, the investment of the proceeds of her life insurance and consultations regarding her investments, the making of bank deposits, the purchase of merchandise to meet her needs, and the furnishing of companionship.

It was then alleged that at the expiration of such period of two months plaintiff suggested that the details of the work being performed by him were so great, taking up his time at intervals during the day, of evenings, and on Sundays, that he preferred that the deceased secure the services of some one else to assist her; that he informed the deceased that if he should continue to render services for her, he would require compensation for so doing; and that it was then and there, at the instance and request of the deceased, orally agreed between her and plaintiff that until her death he should continue to render all such services with respect to her business and personal affairs as should be requested by her, and that for and in consideration of the rendition of such services, the deceased would, at her death, devise by will to plaintiff's wife certain real estate owned by her in the City of St. Louis, known as 277-277a De Baliviere Avenue, which was of substantial value.

Inasmuch as the controversy between the parties goes in part to the question of whether the services rendered were of such a peculiar nature that their value could not be readily estimated in terms of money, we copy so much of the statement as purported to describe the services which plaintiff was called upon to perform. Such portion of the claim was as follows:

"That pursuant to the agreement so made between claimant and the said Cora Leon, claimant continued thereafter to render all such services as requested by the said Cora Leon. That included in said services were (a) frequent calls upon, and consultations with, the said Cora Leon respecting business matters; (b) various trips made by claimant to towns in Illinois, and efforts expended in the City

of St. Louis, in the endeavor to rent the above-mentioned real estate on De Baliviere Avenue in St. Louis, Missouri; (c) securing notes for the said Cora Leon from tenant who had left said De Baliviere Avenue property; (d) the making of lease with Wilson Brothers for a portion of said real estate on De Baliviere Avenue; (e) the renting to one Ben Ritter of said portion of said real estate; (f) the renting of said portion of said real estate to a certain other tenant for a soft-drink parlor; (g) assistance in making settlement with fire insurance company for, and valuation of, loss occasioned by fire; (h) the renting to the Melsheimer Baking Company for a term of five years of a portion of said real estate on De Baliviere Avenue; (i) advice and assistance to the said Cora Leon with respect to the proposal of the Melsheimer Baking Company for the erection of an addition to the De Baliviere Avenue building, assistance in connection with contract for the construction of said addition, and services in connection with agreement with said baking company for the tenancy upon said addition, and daily inspection of the progress of the work on said addition; (j) the negotiation with the Melsheimer Baking Company of a ten-year lease, at a rental of $378.75 per month, of the ground floor and basement of said De Baliviere Avenue property upon the agreement that the Melsheimer Baking Company should, in addition to said rental, pay for coal, gas for water heating, janitor, ash hauling, plate glass insurance, water license, repairs on or replacement of heating apparatus, and janitor supplies, and upon the further provision that the premises should at the termination of the lease be by the lessee restored to its original condition, there being as sureties or guarantors upon the lease (which was itself entered into by the Melsheimer Baking Company) Messrs. Edward Melsheimer, Louis Melsheimer and Fred Dietrich; (k) the looking after all repairs and improvements on real estate of the said Cora Leon; (1) efforts to rent certain real estate on Carr Street and on South Broadway, and the renting of the latter real estate; (m) assistance in preparing income tax and general tax returns; (n) almost daily calls upon the said Cora Leon, furnishing requested companionship and numerous personal attentions; (o) purchase of merchandise at various stores in the City of St. Louis for the said Cora Leon; (p) making of bank deposits; (q) assistance in the sale of certain real estate on Carr Street; (r) the preparation of papers for lease of millinery store room in the De Baliviere Avenue real estate; (s) making arrangements with Mississippi Valley Trust Company for collection of rentals upon real estate while the said Cora Leon accompanied claimant and his wife and his wife's mother to Europe, and the securing of a reduction of rates of commission for such collection; (t) clipping of coupons from bonds and arrangement with bank for collection thereof during absence in Europe; (u) assistance to the said Cora Leon in selling furniture; (v) service in obtaining

passports and visas and railroad and steamer transportation for the said Cora Leon; (w) personal services en route to Europe, including attendance during illness on boat and looking after her comfort and safety; (x) numerous personal services in Europe, including companionship, ordering meals because she could not understand the language, assisting her to find her way about cities because of her inability to understand street signs and to make herself understood, attendance upon her in illness, looking after her comfort, convenience and safety, assistance in connection with baggage and transportation for her return trip; (y) advice with respect to a proposed revolving advertising sign on building, and with respect to contract concerning same; (z) advice with respect to a proposed tenant for a part of the De Baliviere Avenue building; (aa) advice with respect to certain bonds, the property of a nephew of the said Cora Leon, the custody of which bonds had been held by the said Julius Leon and subsequently by Cora Leon; (bb) advice with respect to certain Arkansas Drainage District bonds, and investigation concerning same; (cc) advice with respect to merit, or lack of merit, of second mortgage bonds as an investment.''

It was further alleged that the deceased was of an exacting disposition and possessed of certain peculiarities which rendered it exceedingly difficult to please her or transact business with her, and that by reason of such facts the performance by plaintiff of the services requested by her was uncommonly difficult and arduous.

The claim concluded with the representation that upon the death of the deceased, when her last will and testament was filed for probate, it failed to contain a devise to plaintiff's wife of the De Baliviere Avenue real estate or of any other real estate, and that in fact no legacy of any kind had been left to plaintiff's wife.

Fixing the value of the services rendered by plaintiff pursuant to the oral agreement entered into between him and deceased at the sum of $20,000, an allowance of such sum was prayed from the estate. Upon an appeal from the judgment of the probate court, the case was heard *de novo* in the circuit court, where plaintiff obtained a verdict and judgment for $5,000. The case reaches this court upon defendant's appeal from such judgment.

No motion for a new trial was filed, but only a timely motion in arrest of judgment, the matters complained of being ones of substance and not of form and patent on the face of the record, and challenging plaintiff's right to a recovery upon the face of the record proper. With the scope of our review thus limited, the questions raised are ones that may be fully taken advantage of in this court, notwithstanding the fact that no motion for a new trial was filed. [Beall v. Graham, 125 Mo. App. 38; 102 S. W. 636.]

So here we have a case where plaintiff entered into an oral contract with the deceased, agreeing to render services to the deceased in

consideration of the latter's agreement to devise a designated parcel of real estate to plaintiff's wife, a third party; where plaintiff has fulfilled his part of the agreement, and has rendered the agreed services; where, at the death of the other contracting party, there has been a breach of the contract, no devise of the real estate being contained in her will; and where plaintiff has elected, in so far as he may, to waive all rights, both his own and those of his wife, under the contract and to bring the present action in *quantum meruit* to recover in his own right the reasonable value of the services so rendered. The question for decision is, Does he have the right to maintain the present action, or, in other words, has he stated a case upon the face of his claim which warrants the entry of a judgment in his favor?

Generally speaking, in the case of a breach of an enforceable contract to devise real estate by will in return for services rendered, the plaintiff may sue the heirs in equity for specific performance, or he may sue the administrator at law for the breach and recover damages the measure of which is the contract price or its value, or he may abandon the contract, as is attempted to be done in this instance, and sue the administrator in an action at law in *quantum meruit* for the reasonable value of his services not to exceed the amount agreed upon. [Blackwell v. De Arment's Estate (Mo. App.), 300 S. W. 1035.]

However, the above, in its entirety, presupposes a valid contract, enforceable at law; and at once the remedies available in this case are necessarily restricted since an agreement to devise real estate is one within the Statute of Frauds (Buxton v. Huff (Mo.), 254 S. W. 79; 27 C. J. 208), and the agreement between plaintiff and the deceased was concededly an oral one.

Were it not for the beneficial interest of plaintiff's wife in the contract, there would be no doubt of plaintiff's right to maintain this action, since where an oral agreement to devise land is incapable of enforcement because within the Statute of Frauds, an appropriate remedy is by an action at law in *quantum meruit* to recover the fair and reasonable value of the services, the recovery in such an instance not being on the special contract itself but on the contract implied by law, and the Statute of Frauds consequently constituting no defense. [Hall v. Getman, 121 Mo. App. 630, 97 S. W. 607; Koch v. Hebel, 32 Mo. App. 103; 27 C. J. 363; 40 Cyc. 1069.]

But we do not believe that any such remedy is available to plaintiff in the case at bar in view of the peculiar facts and circumstances attending the execution of the contract and the designation of the parties under it. When the contract was entered into between plaintiff and the deceased, it was for the sole benefit of plaintiff's wife, and her acceptance of it is to be presumed. [Rogers v. Gosnell, 58 Mo.

589.] There is no question here of a rescission of the contract by the original contracting parties prior to the time when the rights of plaintiff's wife became vested under it, since the breach did not occur and the cause of action accrue until the moment of the death of the deceased, prior to which eventuality the contract could not have been completely performed. [Blackwell v. De Arment's Estate, supra; 40 Cyc. 1067.] Consequently, at the time this claim in *quantum meruit* was filed, presumptively effecting the abandonment of the contract and appropriating the entire cause of action to plaintiff, his wife nevertheless retained all the rights she had ever possessed under the contract, and the prosecution of this claim by plaintiff does not in anywise purport to commit his wife to a waiver of whatever rights she has thereunder. Nor may it be said that he sues as trustee of an express trust for her benefit, because he is not suing upon the specific contract at all or for its breach, but in *quantum meruit* upon a contract implied by law in consideration of the services rendered by him personally. It must be borne in mind that plaintiff's wife rendered absolutely no services, and therefore she has no rights for which she is entitled to be recompensed unless under the specific contract.

Now conceding that no action for breach of the contract was maintainable, either by plaintiff or his wife, because the contract, being oral, was within the Statute of Frauds, and conceding further that plaintiff's wife, having rendered no services to the deceased, could have maintained no action in *quantum meruit* upon an implied contract, it remains to be seen whether a suit for specific performance was available to her as a third and last resort. If so, plaintiff was not entitled to attempt to waive all rights of his wife under the contract, regardless of any renunciation on her part, and thus subject the heirs to a double liability; but if the contract was not one for specific performance, then plaintiff's wife had no rights under it, it was in effect a mere nullity (assuming that the defense of Statute of Frauds would be interposed), and plaintiff may maintain his claim in *quantum meruit* upon the theory of an implied promise to pay the reasonable value of his services just as though the oral contract had never been entered into.

Despite the fact that it may fall within the Statute of Frauds, the power of a court of equity will be exerted to enforce a contract of the nature now under consideration when to refuse enforcement would be to permit the defaulting party, or those claiming under him, to make use of the statute to perpetrate a fraud. [Buxton v. Huff, supra; Woodard v. Strowell (Mo.), 222 S. W. 815; Signaigo v. Signaigo (Mo.), 205 S. W. 23.] Obviously, however, the assumption of equitable jurisdiction necessarily contemplates that there has been no such part performance of the contract as to take it from within the Statute of Frauds and render it properly cognizable at law, pro-

viding, of course, that the terms of the contract are such that the law would be enabled to furnish an adequate measure of damages for its breach.

We are aware that in the case of a contract of the general nature and character of the one entered into between plaintiff and the deceased, where the consideration is the rendition of services readily estimable and recompensable in terms of money, the rendition of the services by the one party will neither be regarded as such part performance as to relieve the oral contract from the operation of the Statute of Frauds, because payment in money will ordinarily place the parties in their previous positions; nor, for the same reason, will it authorize the entry of a decree of specific performance, an action at law to recover the reasonable value of the services being adequate. [Buxton v. Huff, supra; 58 C. J. 1017.]

However, we think this case is one where a suit for specific performance would be entirely appropriate and proper. Plaintiff and the deceased, in the making of the contract, contemplated the rendition of services, the extent and value of which were to be largely speculative and contingent, and which included both business and personal attentions incapable, in part at least, of being the subject of explicit contract or of being readily valued in terms of money. That the services required were of a nature not readily to be estimated in terms of money seems recognized by plaintiff in the statement of his claim, where he set up, after enumerating in a general way the character of the services performed, that the deceased was of an exacting disposition and possessed of certain peculiarities which rendered it exceedingly difficult to please her or to transact business with her, and consequently made the rendition of services uncommonly arduous and difficult.

In view of the fact that the services rendered could not be accurately measured by any pecuniary standard, that the contracting parties did not intend that they should be valued in any such fashion, and that the services rendered were wholly referable to the contract and not to any other relationship, it follows that the case is one for specific performance, the suit being subject to be maintained by plaintiff's wife herself as the one for whose benefit the contract was made. [Sutton v. Hayden, 62 Mo. 101; Hall v. Getman, supra; 58 C. J. 1018.]

We conclude, therefore, that having entered into a contract for his wife's sole benefit under which she acquired a vested interest, at least at the death of the deceased if not before; that inasmuch as such contract, though within the Statute of Frauds by reason of being oral, was nevertheless one for specific performance at the instance of the wife suing in her own right; and that having made the instant claim in *quantum meruit* for his own benefit and in derogation of his wife's right to specific performance, plaintiff's claim must

be held to have been unfounded and unwarranted in law, and not of a character to support the judgment rendered in his favor.

Accordingly the Commissioner recommends that the judgment of the circuit court be reversed.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, reversed. *Becker, P. J.,* and *Kane* and *McCullen, JJ.,* concur.