IN RE ESTATE OF MARY CHALUPA.
AMELIA CHALUPA, APPELLEE, V. OTTO E. MOLINE, ADMINIS-
TRATOR, APPELLANT.

280 N. W. 164

FILED JUNE 10, 1938. No. 30380.

*James H. Anderson,* for appellant.

*Floyd E. Wright, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and
MESSMORE, JJ., and RYAN, District Judge.

RYAN, District Judge.

This is an appeal from a judgment of the district court
for Scotts Bluff county in favor of the plaintiff allowing a
claim against the estate of Mary Chalupa, deceased, in the
amount of $1,680, for the care of said deceased for parts
of the years 1926 to 1936.

Briefly stated, the facts in the case are these: Plaintiff's
father died in 1926 leaving his widow and nine children
of which the plaintiff is the youngest. Most of the children
were then married and living away from the family home;
the others with the exception of plaintiff married and
established homes of their own before the death of the

mother. Plaintiff was 19 years of age at the time of her father's death and her mother was about 60. After her father's death plaintiff lived with and took care of her mother, who was in poor health and in need of care, except for the school months of three years when she was away teaching rural schools, and for a few months spent in Omaha in 1935 and 1936.

In support of her claim, plaintiff testified that she expected to be paid for the services she rendered for her mother and that her services were reasonably worth the sum of $30 a month. She produced a memorandum entitled "Wage Scale for Amelia" which enumerated the years and months plaintiff had been with her mother and fixed the compensation at $30 a month. This memorandum was signed by her mother, Mary Chalupa. Two disinterested witnesses testified to conversations had with the deceased in which the mother stated that Amelia would be paid for her services. One of them quoted the mother as saying, "Well, we have taken care of that. I will be sure Amelia will be paid for what she has done for me."

The leading cases in this state with reference to the question involved are *Bell v. Rice,* 50 Neb. 547, 70 N. W. 25, and *In re Estate of Wieland,* 104 Neb. 412, 177 N. W. 651. Those cases hold that, as a general proposition, where a child renders services for a parent, while the family relation exists, the law presumes, by reason of the kinship of the parties and such family relation, that such services were gratuitously rendered; that such presumption is not a conclusive one, however, and the child may recover the value of the services rendered if the evidence shows that they were rendered under an express contract to pay for them or under such circumstances as to justify the inference of a contract on the part of the parent to pay for them. The case of *Bell v. Rice, supra,* further holds that whether the evidence warrants such a conclusion is a question for the jury.

In instruction No. 5 the court told the jury that before they could find for the plaintiff they must find: "(1) That

Mary Chalupa expected to pay Amelia Chalupa; (2) that Amelia Chalupa intended to collect from Mary Chalupa, and performed the services for which she claims in the expectation of being paid; (3) that Amelia Chalupa knew that Mary Chalupa intended to pay her and that Mary Chalupa knew that Amelia Chalupa intended to collect for her pay." The court further instructed the jury: "Mere expressions of intent to bestow a bounty made by the deceased, Mary Chalupa, are not sufficient of themselves to show a contract for payment. Before you can find for the claimant in this action it must clearly and satisfactorily appear that there was an express contract whereby Mary Chalupa agreed to pay for the services of Amelia Chalupa, and that the claimant performed the services in expectation of receiving such pay." These instructions correctly stated the law applicable to the case and no exception is taken to them.

The appellant insists, however, that the evidence was insufficient and it was error for the court to submit the case to the jury. In cases of this kind, where the claimant is barred by statute from testifying to any conversation or transaction with the deceased, the only way of proving an express contract is by showing the facts and circumstances which existed and statements made by the deceased to third parties. While the statements to which the disinterested witness testified in this case are not definite as to the terms and provisions of the contract, they are sufficient to show that the mother expected to remunerate her daughter for the care which she was receiving and, coupled with the writing signed by her in December, 1936, were sufficient to warrant the submission of the case to the jury.

No reversible error appears in the record, and the judgment of the district court is accordingly

AFFIRMED.